A00A0639. HUGULEY v. THE STATE.
(529 SE2d 915)

ELDRIDGE, Judge.

Meldamion Huguley was convicted by a jury on two counts of aggravated assault on February 11, 1999. He appeals from the trial

---

court's denial of his motion for new trial, which raised, inter alia, the issue of ineffective counsel. We find no error and, therefore, affirm.

The facts, viewed in a light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Paz v. State*, 239 Ga. App. 278 (3) (521 SE2d 362) (1999), are as follows: On his eighteenth birthday, Huguley received $108,000, the proceeds of a settlement from a personal injury suit arising from a childhood injury. Huguley soon adopted the habit of carrying around several thousand dollars in cash. On June 23, 1998, Huguley began arguing with a friend on Tiffany Circle in DeKalb County in the presence of several other people, including children. The two exchanged gunfire, and Huguley shot his friend in the arm. Huguley then went into a house and emerged with a semiautomatic weapon, "the type of gun that . . . you clean the streets with." However, the gun jammed on Huguley, and he left. Huguley was not charged in this incident because his friend refused to cooperate with police.

On the day of that shooting, however, Carlos Valcarcel was visiting his brother, Paul, who lived on Tiffany Circle. Carlos witnessed the shooting incident, and Paul called 911. Carlos gave a statement to police officers.

Approximately two weeks later, Huguley returned, and Paul called the police. A police officer responded and talked to Huguley and Paul separately. After the officer left, however, Paul overheard Huguley tell his friends that "I was wanted for a shooting; now, I'm going to be wanted for murder." Paul became concerned and asked Carlos and his wife, Belinda, to come over. Later, as Carlos and Belinda were leaving Paul's house that evening, Huguley drove up and parked his blue Cadillac in the middle of the road. A white car pulled in behind him. Huguley emerged from the Cadillac and approached the white car while holding a handgun. The Valcarcels were frightened and, with their car headlights turned off, slowly backed out of Paul's driveway, hoping that they would not attract Huguley's attention. Carlos drove down the street and attempted to leave the neighborhood but soon realized that Huguley was following him. Huguley attempted to pass the Valcarcels, but Carlos swerved and prevented Huguley from passing, because he feared that Huguley would shoot him and his wife. Huguley then shot his gun from the car. Carlos turned into a side street but was unaware that it had no exit; the street circled around in a "9" shape, meeting the entrance road. Huguley was familiar with the street layout and parked his car in the middle of the street to block the exit and prevent the Valcarcels from leaving. Huguley exited his car and hid behind a tree. When the Valcarcels drove toward him, Huguley "ambushed" them by jumping from behind the tree and shooting his gun several times as he approached the Valcarcels' car. Carlos put the car in reverse,

backed into a space between two houses, and turned off the headlights. Carlos walked around the back of the houses to see if it was safe before he finally left the area several minutes later. The Valcarcels testified that they were afraid that they were "going to be shot" and that they were "hysterical" and "in shock." Carlos described the experience as "one of the worst nightmares you can ever get into, wondering if you're going to get out of it alive or not."

Huguley returned to Tiffany Circle and drove by Paul's house three times, stopping in front of the house each time. In the meantime, Carlos called his brother, because he was afraid that Huguley was going to go back to that area. Carlos also called the police and then spotted Huguley's Cadillac at a nearby gas station. Huguley stepped out of his car and changed his shirt behind a bush. Police officers stopped Huguley, and the Valcarcels identified him. When Huguley was arrested for shooting at the victims, he told police officers that he did not own a gun, but a nine millimeter pistol and magazine were discovered in Huguley's car in a search incident to his arrest.

Huguley was convicted by a jury of two counts of aggravated assault on February 11, 1999. Huguley's motion for new trial asserted the general grounds and a contention that he received ineffective assistance of counsel. The trial court denied the motion on September 23, 1999, expressly finding that Huguley was not denied effective assistance. Huguley appeals therefrom. *Held*:

1. In his first enumeration, Huguley claims that his trial counsel was ineffective for failing to request a charge on the allegedly lesser included offense of reckless conduct. He claims he was entitled to such charge because, in firing his weapon, he did not intend to injure the victims, but only to "warn" them. This enumeration lacks merit.

> In order to establish that trial counsel's performance was so defective as to require a new trial, [Huguley] must show that counsel's performance was deficient and that the deficient performance so prejudiced [Huguley] that there is a reasonable likelihood that, absent counsel's errors, the outcome of the trial would have been different. There is a strong presumption that counsel's conduct fell within a broad range of reasonable professional conduct.

(Citation and punctuation omitted.) *Allen v. State*, 271 Ga. 502, 503 (2) (521 SE2d 190) (1999). "The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous." (Citations and punctuation omitted.) *Herndon v. State*, 235 Ga. App. 258, 259 (509 SE2d 142) (1998).

(a) Aggravated assault is a felony which occurs when a person utilizes a deadly weapon to commit "an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA §§ 16-5-20 (a) (2); 16-5-21 (a) (2). Under this statute, the focus is on

> the victim's state of mind, rather than the accused's. . . . There is an intent of the accused that must be shown, but it is only the criminal intent to commit the acts which caused the victim to be reasonably apprehensive of receiving a violent injury, not any underlying intent of the accused in assaulting the victim. . . . *It is the state of mind of the victim* that determines whether an assault [under] OCGA § 16-5-20 (a) (2) has been committed.

(Citations omitted; emphasis supplied.) *Dunagan v. State*, 269 Ga. 590, 594 (2) (b) (502 SE2d 726) (1998). In other words, "[u]sing a deadly weapon to commit an act *which places another in reasonable apprehension of immediately receiving a violent injury* amounts to an aggravated assault, absent justification."[1] (Citations and punctuation omitted; emphasis in original.) *Riley v. State*, 181 Ga. App. 667, 670 (353 SE2d 598) (1987). See also *Dunagan v. State*, supra at 593 (2) (b); *Paz v. State*, supra; *Briard v. State*, 188 Ga. App. 490, 493 (373 SE2d 239) (1988). "Where the evidence shows either the completed offense, as averred, or no offense, such evidence will not support a verdict for one of the lesser included offenses." (Citation and punctuation omitted.) *Paz v. State*, supra at 279 (2).

In contrast,

> [r]eckless conduct occurs when a person causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. OCGA § 16-5-60 (b). The distinguishing difference between a charge of aggravated assault and one of reckless conduct is that in a case of aggravated assault, [placing another in fear of receiving a violent injury] is the *intended* consequence of the defend-

---

[1] Although Huguley claimed upon arrest and at trial that he shot at the Valcarcels because he thought they were going to rob him, the jury obviously rejected this defense. This was understandable, since no evidence was presented to support self-defense. When the shots were fired, the Valcarcels were unarmed and driving away from Huguley in an attempt to escape his unprovoked attack.

ant's act, whereas with reckless conduct, the [victim's apprehension] is a product of the defendant's criminal *negligence.* Compare *Shaw v. State*, 238 Ga. App. 757 (519 SE2d 486) (1999) [(physical precedent only)].

(Emphasis in original.) *Paz v. State*, supra at 278 (2). See also *Briard v. State*, supra at 493; *Riley v. State*, supra at 670; *Bowers v. State*, 177 Ga. App. 36, 37-38 (338 SE2d 457) (1985).

(b) The basic facts of this case are not in dispute. In a custodial statement and again at trial, Huguley admitted that he chased the victims in his car, fired his gun during the chase, blocked the exit of the subdivision so the victims could not escape, jumped out from behind a tree, approached the victim's vehicle, and intentionally fired three to five "warning shots." This begs the question — what was he "warning" the victims about, if not the very real possibility that Huguley's next shots would violently injure or kill them?

In fact, the only dispute is whether Huguley directed these "warning shots" *at them*, as the Valcarcels contend, or *into the air*, as Huguley contends. However, this is a nonissue, because, either way, Huguley's intent was to put the Valcarcels in fear of an immediate bodily injury. See *Briard v. State*, supra at 493. Thus, a charge on reckless conduct was not warranted. Id.

The evidence, including Huguley's own admissions, clearly established that Huguley repeatedly fired his weapon with the intention of scaring the victims, even if he did not intend to hit them. As such, the evidence established aggravated assault under OCGA § 16-5-21 (a) (2), and there was no error in the failure to give an instruction on reckless conduct. *Shaw v. State*, supra at 759. Since Huguley was not entitled to a charge on reckless conduct, his trial counsel cannot be deemed ineffective for failing to request such charge. There was no error.

2. In his second enumeration, Huguley complains about the adequacy of the trial court's recharge to the jury during deliberations. The recharge was in response to the following jury inquiries: "May we have a written definition of assault and aggravated assault?" and "Does a weapon need to be aimed at a person to constitute aggravated assault?" The trial court sent out one written message to address both issues. The message included the statutory definitions of assault and aggravated assault under OCGA §§ 16-5-20 and 16-5-21, as well as the following:

To constitute an assault, actual injury to the other person need not be shown. It is only necessary that the evidence show, beyond a reasonable doubt, an intention to commit injury on another person, coupled with the apparent ability

to commit that injury, or that the other person was intentionally placed in reasonable apprehension of immediately receiving a violent injury from the defendant.

This was a reiteration of the instructions previously given the jury and is a correct statement of the law. See *Head v. State*, 233 Ga. App. 655, 656 (2) (504 SE2d 499) (1998). We find that it adequately addressed both of the jury's issues. There was no error.
*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 22, 2000 —
RECONSIDERATION DENIED MARCH 9, 2000.

*Peter M. Zeliff*, for appellant.
*J. Tom Morgan, District Attorney, Maria Murcier-Ashley, Melissa L. Himes, Assistant District Attorneys*, for appellee.