## S00A0510. STOBBART v. THE STATE.
### (533 SE2d 379)

HINES, Justice.

Christopher Stobbart appeals his convictions for malice murder, aggravated assault, and possession of a firearm during the commission of a crime. For the reasons that follow, we affirm in part and reverse in part.[1]

---

[1] The crimes occurred on August 30, 1998. In the January 1999 term, a DeKalb County grand jury indicted Stobbart for the malice murder of Carmen DeFranks, the felony murder of DeFranks during the commission of aggravated assault, the aggravated assault of Christopher Marchitelli, and possession of a firearm during the commission of the crime of malice murder. Stobbart was tried before a jury June 1-4, 1999, found guilty on all counts, and sentenced to life in prison for malice murder, twenty years in prison for aggravated assault, concurrent with the life term, and five years in prison for possession of a firearm during the

Construed to support the verdicts, the evidence showed that the shooting victim, Carmen James DeFranks, owned a towing company for which Stobbart worked. On the night of the shooting, Stobbart and DeFranks argued in the parking lot of a tavern. DeFranks blamed Stobbart for assisting Dobrick, a co-worker and roommate of Stobbart's, in avoiding work that evening, by allowing Dobrick to accompany Stobbart to the tavern. Dobrick stated that he was quitting DeFranks's company; Stobbart had given his own notice earlier. The exchange between Stobbart and DeFranks grew heated and Stobbart testified that DeFranks took a pistol from his automobile and placed it in his pants at the small of his back, saying to Stobbart: "I don't know why you're f_ _ _ing me; you f_ _ _ with the bull, you get the horns." Stobbart knew that DeFranks usually had a pistol either on his person or in his automobile.

Later, Stobbart and a female friend, Martin, went to Stobbart's apartment and found DeFranks with Stobbart's other roommate, Marchitelli, who also worked for DeFranks. Stobbart and DeFranks resumed their argument, during which both Stobbart and Martin attempted to leave. DeFranks stood in the door and told them they could not. Stobbart asked DeFranks to let Martin leave because she was not a part of the argument but DeFranks refused. At one point, Stobbart went out on his balcony and saw a friend, Paden, and told him that DeFranks had a pistol. Paden asked Stobbart what he wanted him to do, but Stobbart said he did not know. DeFranks called Stobbart back into the apartment, told Stobbart to put down the cellular telephone he was carrying, and the argument resumed. DeFranks told Stobbart that he would "get what's coming to [him]" and that DeFranks would "take care of [him]." Stobbart testified that during the argument, DeFranks placed his hand on his pistol and Stobbart could see the butt of the weapon.

Stobbart went into his bedroom and retrieved his own pistol. He emerged and shot DeFranks. He shot DeFranks several times, turned to Marchitelli who was seated on the sofa, pointed the pistol at him and asked if he had a problem. Marchitelli said no and Stobbart told him to leave, which he did, as did Martin. Stobbart went into his bedroom for more ammunition, and, as DeFranks lay on the floor, shot him several more times. Stobbart then called 911 and told the operator that he had shot and killed someone because the shooting victim would not let him leave his apartment.

1. The evidence authorized the jury to conclude that Stobbart

commission of a crime, to run consecutively to the life term; the felony murder stood vacated by operation of law. Stobbart filed a motion for new trial on July 2, 1999, which was denied on October 6, 1999. He filed a notice of appeal on November 5, 1999, his appeal was docketed on December 10, 1999, and orally argued on March 14, 2000.

was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Burnett v. State*, 270 Ga. 885, 886 (515 SE2d 150) (1999).

2. Stobbart gave notice of intent to present evidence of prior violent acts perpetrated by DeFranks. See Uniform Superior Court Rule 31.6. The State moved in limine for an order prohibiting Stobbart from introducing any mention of prior violent acts by DeFranks, or any mention of a reputation for violence on the part of DeFranks, including any assertion that DeFranks was a member of organized crime, and the trial court granted the motion until such time as a prima facie case of justification had been made. See *Knight v. State*, 271 Ga. 557, 560-561 (4) (521 SE2d 819) (1999). After Stobbart's direct testimony to the jury, and again after his cross-examination, the court ruled that a prima facie case of justification had not been made. Stobbart contends it was error for the trial court to exclude evidence of DeFranks's violent acts, to exclude evidence of his reputation for violence, and to require that Stobbart's statement to the police not be read to the jury until portions dealing with an incident in which DeFranks and Marchitelli beat a tow truck driver, and an assertion by DeFranks that he was in the Mafia, were redacted.

To make a prima facie showing of justification so as to allow evidence of violent acts by the victim against third parties, "the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself." *Knight*, supra, quoting *Laster v. State*, 268 Ga. 172, 174 (2) (486 SE2d 153) (1997). The same showing must be made to introduce evidence of the victim's reputation for violence. See *Smith v. State*, 267 Ga. 372, 374 (3) (477 SE2d 827) (1996).

There was evidence showing each of the elements of the prima facie case. It could be concluded that by barring the door, DeFranks was the aggressor. In fact, it could be inferred he was committing the crime of false imprisonment. See OCGA § 16-5-41 (a); *Herrin v. State*, 229 Ga. App. 260, 263 (3) (493 SE2d 634) (1997). His acts of threatening Stobbart while placing his hand behind his back and on his pistol could be deemed to be an assault. See OCGA § 16-5-20 (a) (2); *Hall v. State*, 189 Ga. App. 107, 108 (1) (375 SE2d 50) (1988). Finally, on cross-examination, Stobbart testified that when he fired, DeFranks had his hand behind his back. This is evidence from which it could be concluded that Stobbart was honestly trying to defend himself when he shot DeFranks. Justification was Stobbart's sole defense and that defense was largely dependent on what Stobbart knew about DeFranks. Thus, the excluded evidence was highly relevant to his defense, and it cannot be said that the error in refusing the admission of this evidence was harmless. See *Barber v. State*, 268 Ga. 156, 158 (2) (486 SE2d 353) (1997).

Accordingly, the conviction for malice murder cannot stand, nor can the conviction for possession of a firearm during the commission of a crime, as the crime specified in the indictment was malice murder.

3. Stobbart was charged with aggravated assault for pointing the pistol at Marchitelli. He argues that the trial court should have instructed the jury on the lesser offenses of simple assault, reckless conduct, and pointing a firearm at another.

Stobbart testified that he pointed the pistol at Marchitelli because he feared that Marchitelli might be armed and he wanted Marchitelli to leave. Marchitelli testified that he did not know whether the pistol was loaded or unloaded, but even an unloaded pistol pointed at another in a threatening manner is a deadly weapon when it reasonably appears to the victim that the weapon might be loaded. *Adsitt v. State*, 248 Ga. 237, 240 (6) (282 SE2d 305) (1981). Thus, the only evidence was that Stobbart committed an act intending to place Marchitelli "in reasonable apprehension of immediately receiving a violent injury," OCGA § 16-5-20 (a) (2), and that he did so with a deadly weapon. OCGA § 16-5-21 (a) (2). If his act was justified, it was no crime; if not, it was the crime of aggravated assault. The jury was instructed on justification and rejected it as a defense to the aggravated assault charge.

There was no evidence supporting the requested charges on lesser crimes. If Stobbart committed a simple assault, it was done with a deadly weapon, making it an aggravated assault, and a charge on simple assault was not warranted. As to reckless conduct, the only testimony was that in pointing the pistol at Marchitelli, he did so intentionally, not "consciously disregarding a substantial and unjustifiable risk that his act or omission [would] cause harm or endanger [Marchitelli's] safety," see OCGA § 16-5-60, and consequently the trial court properly refused to give a jury instruction on reckless conduct.

Similarly, the requested charge on pointing a firearm was not warranted. Although Stobbart argues that testimony showed the weapon was unloaded when he pointed it at Marchitelli, and that he therefore had a lower level of criminal culpability than that required for aggravated assault, OCGA § 16-5-20 (a) (2)

looks to the victim's state of mind, rather than the accused's, to establish the elements of an assault. There is an intent of the accused that must be shown, but it is only the criminal intent to commit the acts which caused the victim to be reasonably apprehensive of receiving a violent injury, not any underlying intent of the accused in assaulting the victim. [Cit.]

*Dunagan v. State*, 269 Ga. 590, 593 (2) (b) (502 SE2d 726) (1998). The only testimony was that the weapon was pointed as a threat and perceived as such, and therefore an assault. "Although pointing a firearm at another is an offense included in aggravated assault, it is not error to refuse a charge on it when the evidence does not reasonably raise the issue that [the] defendant may be guilty only of the lesser crime. [Cit.]" *Head v. State*, 233 Ga. App. 655, 659 (4) (504 SE2d 499) (1998).

4. There was no evidence to support a jury charge on defense of habitation. OCGA § 16-3-23 authorizes use of force to terminate an "unlawful entry into or attack upon a habitation." The statute is clearly concerned with the use of deadly force to counter entry, or attempted entry, into the home. See *Darden v. State*, 233 Ga. App. 353, 354 (1) (504 SE2d 256) (1998). DeFranks was already in the apartment when he was shot, and there is no evidence that he made any threats against the habitation. Further, he was there as a guest of Marchitelli, who was a resident of the apartment and signer of its lease, and defense of habitation is not a defense available to a defendant when the victim is a guest in the home. *Stephens v. State,* 71 Ga. App. 417 (31 SE2d 217) (1944).

*Judgments affirmed in part and reversed in part. All the Justices concur.*

DECIDED JULY 10, 2000.

*Jerome C. McKee,* for appellant.

*J. Tom Morgan III,* District Attorney, *Barbara B. Conroy, Maria Murcier-Ashley,* Assistant District Attorneys, *Thurbert E. Baker,* Attorney General, *Paula K. Smith,* Senior Assistant Attorney General, *Adam M. Hames,* Assistant Attorney General, for appellee.