S07A1312. LUDY v. THE STATE.
(658 SE2d 745)

HINES, Justice.
Mitchell Lavern Ludy appeals his convictions for malice murder, aggravated assault, and possession of a firearm during the commission of a felony, in connection with the death of Otis Williams. For the reasons that follow, we affirm in part and vacate in part.[1]

---

[1] The crimes occurred on September 26, 2004. On April 20, 2005, a Clayton County grand jury indicted Ludy for the malice murder of Charles Ammons, the malice murder of Otis Williams, the felony murder of Ammons while in the commission of aggravated assault, the felony murder of Williams while in the commission of aggravated assault, the aggravated

Construed to support the verdicts, the evidence showed that on September 25, 2004, Ludy met with a prostitute, Denise Carnegie, on a street. At her instigation, Ludy drove with her in his blue-green car to an apartment rented by Otis Williams; Carnegie often took people to Williams's apartment to use illegal drugs. After Carnegie and Ludy engaged in sexual relations, for which Ludy paid, Carnegie introduced Ludy to Charles Ammons, a drug dealer. After purchasing illegal drugs, Ludy wished to purchase more crack cocaine from Ammons and his girlfriend, Kenetta Killings. Ludy, however, did not have any additional money. He agreed to pay double the normal price if they sold him drugs on credit. He agreed to go to an automatic teller machine ("ATM") with them in the morning when he would have money in his account, and Ludy was supplied with more drugs.

At 6:00 a.m. on September 26, 2004, Killings told Ammons to take Ludy to an ATM. Carnegie, who had returned to the apartment to change clothes, saw Ammons preparing to take Ludy to an ATM. She told Williams to go with them. A video camera at a gas station and convenience store recorded Ludy exiting a green vehicle, possibly a Saturn, with two passengers in it; another camera recorded Ludy standing at an ATM inside the store for several seconds before walking outside.

Later that day, a police officer was dispatched to a shopping center to investigate two bodies, Williams's and Ammons's. Each had a fatal gunshot wound to the left side of his head. The next day, firemen responding to a vehicle fire at an apartment complex found a green four-door Saturn ablaze; the car belonged to Ludy.

Ludy was visited by police investigators and initially said that: he shot the two men while wrestling over a pistol in his car; he had

---

assault of Ammons, the aggravated assault of Williams, two counts of possession of a firearm during the commission of the crime of murder, arson in the second degree, and two counts of the use of a firearm by a convicted felon. Ludy was tried before a jury November 13-17, 2006, and found guilty of the malice murder of Williams, the felony murder of Williams, the aggravated assault of Williams, and possession of a firearm during the commission of the murder of Williams; he was acquitted of the malice murder of Ammons, the felony murder of Ammons, the aggravated assault of Ammons, possession of a firearm during the commission of the murder of Ammons, and arson in the second degree. Additionally, the trial court directed a verdict of acquittal on one charge of use of a firearm by a convicted felon, and an order of nolle prosequi was entered on the other charge of use of a firearm by a convicted felon. On November 28, 2006, the trial court sentenced Ludy to a term of life in prison for malice murder, a consecutive term of twenty years in prison for aggravated assault, and a term of five years in prison for possession of a firearm during the commission of a crime, to be served consecutively to the term for aggravated assault; the felony murder of Williams was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). On December 14, 2006, Ludy filed a motion for a new trial, which he amended in open court on December 29, 2006; the motion was denied on December 29, 2006. Ludy filed a notice of appeal on January 29, 2007, his appeal was docketed in this Court on May 16, 2007, and orally argued to the Court on September 10, 2007.

gone to an ATM with the victims to repay them for crack cocaine; he was unable to withdraw any money; Ammons and Williams grew frustrated; Ammons pulled out a pistol; and he shot the men during a struggle over the pistol while inside the car. Ludy later told the police that: he took a pistol from Williams's apartment and put it in his pocket; in the car, he was angered by having to pay for drugs that Carnegie consumed; he stepped out of the car; and fired one round at each man.

The victims died of gunshot wounds to the left sides of their heads. The two bullet cartridges found at the crime scene were fired from the same pistol, and the shots were fired from outside the vehicle at a distance greater than 2.5 feet from the victims. DNA on Ludy's boot belonged to Ammons, and DNA found on the fabric of Ludy's Saturn matched that of Williams.

1. The evidence was sufficient to enable a rational trier of fact to find Ludy guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Ludy raised an objection under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), to the State's exercise of its peremptory strikes.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discrimina-tory intent. [Cit.]

*Thomas v. State*, 274 Ga. 156, 161 (5) (549 SE2d 359) (2001). A trial court's finding as to whether the opponent of a peremptory strike has proven discriminatory intent is entitled to great deference and will not be overturned unless clearly erroneous. *Barnes v. State,* 269 Ga. 345, 350 (6) (496 SE2d 674) (1998).

The trial court determined that Ludy failed to set forth a prima facie case of racial discrimination. This was not clearly erroneous. Ludy did not introduce evidence to meet his burden of demonstrating that "the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Mitchell v. State*, 275 Ga. 42, 45 (5) (561 SE2d 803) (2002). He did not show the racial composition of the panels from which the jury was selected or the racial composition of the resulting jury. Compare *Livingston v. State*, 271 Ga. 714, 719 (3) (524 SE2d 222) (1999). His only reference to any relevant matter was

to the number of strikes by the State exercised against African-American veniremen, which alone does not give rise to an inference of discrimination. See *Mitchell,* supra. And, even that reference was simply during a colloquy with the bench, which is insufficient to meet the burden of establishing a prima facie case of discrimination. See *Bowden v. State,* 261 Ga. App. 422, 423 (2) (582 SE2d 564) (2003); accord *Woods v. State,* 208 Ga. App. 565, 566 (2) (431 SE2d 167) (1993).[2]

3. Before trial, Ludy filed notice that he intended to introduce evidence of a prior act of violence by victim Ammons against third parties. See Uniform Superior Court Rule 31.6 ("USCR 31.6"). The State moved to exclude such evidence, and Ludy contends that the trial court's ruling on that motion deprived him of the opportunity to address the jury concerning Ammons's violent character in his opening statement, and effectively required him to testify at trial.

Ludy's USCR 31.6 notice stated that: "[a]t Defendant's trial, he will inform the jury" that in 1992, Ammons and an accomplice went to a home to rob a couple, did so, shot one of the victims, and that Ammons and his accomplice both pled guilty to aggravated assault. Before introducing such evidence, a defendant has the burden to set forth a "prima facie showing of justification." *Walden v. State,* 267 Ga. 162, 163 (2) (a) (476 SE2d 259) (1996).

> To make a prima facie showing of justification so as to allow evidence of violent acts by the victim against third parties, "the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself." [Cit.]

*Stobbart v. State,* 272 Ga. 608, 610 (2) (533 SE2d 379) (2000). This is in accordance with "[t]he general rule . . . that the character of a victim is not admissible because it is as unlawful to kill a violent person as to kill a non-violent person. [Cit.]" *Chapman v. State,* 258 Ga. 214, 215 (2) (367 SE2d 541) (1988).

Upon the State's motion to exclude Ludy's desired evidence, the trial court conducted a hearing at which only Ludy testified; no other evidence was introduced. When asked why he shot the victims, he testified: "[b]ecause they robbed me, sir." When asked if the victims made any attacks toward him before he shot them, he responded, "[y]es, sir." And, when asked to expound upon that, he testified: "[u]h,

---

[2] Ludy's remarks in colloquy addressed the State's exercise of its strikes, claiming that eight of the nine strikes exercised by the State were used to remove African-Americans; in rejecting Ludy's assertions in colloquy, the trial court stated "I'm not sure that statistically that's correct."

before I shot them, we were in a fight in my car tussling over the gun. I gained possession of their gun during the struggle and the fight and shot both individuals." He also testified that he told an investigating police officer that he had brought the pistol with him after having taken it from the house, and that there was only one pistol in the car.

The trial court's pre-trial determination that Ludy had not met his burden was not clearly erroneous. See *Watkins v. State*, 264 Ga. 657, 661-662 (4) (449 SE2d 834) (1994); see also *Colbert v. State*, 275 Ga. 525, 526 (2) (570 SE2d 321) (2002). Ludy produced no evidence regarding a prior incident between either victim and a third party. See *Laster v. State*, 268 Ga. 172, 174 (2) (486 SE2d 153) (1997); USCR 31.6 (B). And, his testimony at the hearing did not establish that the trial court was clearly erroneous when it determined that Ludy had failed to show that he was "honestly trying to defend himself." *Stobbart*, supra.

Further, as the trial developed, Ludy was permitted to introduce evidence of Ammons's prior act of violence against a third party during the State's case-in-chief; on cross-examination of the police officer who interviewed him, Ludy introduced a certified copy of Ammons's conviction for two counts of aggravated assault.[3] Nonetheless, Ludy asserts that the trial court "required" him to testify at trial, and that he should have been able to call as a witness a victim of one of Ammons's prior aggravated assaults based solely upon one of the versions of the events that Ludy related to the police officer.

> It is possible to establish a prima facie case [of justification] through the testimony of witnesses other than the defendant. [Cit.] However, if a trial court correctly determines that the testimony of witnesses other than the defendant does not establish a prima facie case of justification, the trial court's insistence that a defendant establish a prima facie case before presenting evidence of the victim's prior acts of violence is not the equivalent to a judicial mandate that the defendant must testify. [Cit.]

*Harrison v. State*, 268 Ga. 574, 577 (3) (492 SE2d 218) (1997). See also *Walden*, supra. At this stage of the trial, Ludy was attempting to rely solely on the testimony of the police officer, and his own pre-trial testimony, to establish a prima facie case of justification.[4] The trial

---

[3] This was introduced with the State's acquiescence.

[4] Ludy later testified in his own behalf, and then presented the testimony of one of the victims of Ammons's 1992 aggravated assaults.

court was not clearly erroneous in ruling that the offered evidence did not show that Ludy was "honestly trying to defend himself." *Stobbart, supra.*

4. The trial court sentenced Ludy for both the malice murder of Williams, and the aggravated assault of Williams by his assault of Williams with the intent to commit murder. Aggravated assault may merge into malice murder as a matter of fact. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). Ludy argues that, in this case, there was a factual merger, and review of the trial record shows that the evidence the State used to prove that Ludy committed the aggravated assault is the same that it used to prove Ludy committed malice murder. As the aggravated assault thus merged into the malice murder as a matter of fact, the separate judgment of conviction and sentence for aggravated assault must be vacated. See *Fitzpatrick v. State*, 268 Ga. 423, 424 (1) (489 SE2d 840) (1997).

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED MARCH 17, 2008.

*David J. Walker*, for appellant.
*Jewel C. Scott, District Attorney, Anece B. White, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary N. Kimmey, Assistant Attorney General*, for appellee.

