## A08A2320. HUDSON v. THE STATE.

(675 SE2d 578)

PHIPPS, Judge.

A jury found Deshannon Hudson guilty of four counts of aggravated assault for discharging a firearm in the direction of Odessa Mann, Shomanda Sanders, Wyconda Sanders, and Felicia Lagare, thereby placing them in fear of immediately receiving a violent injury. Hudson appeals her convictions therefor, contending that the trial court erred by admitting impermissible character evidence, refusing to instruct the jury on reckless conduct, and rejecting her ineffective assistance of counsel claim. Because Hudson has shown no reversible error, we affirm.

At about 3:00 a.m. on July 21, 2005, a deputy sheriff was dispatched to a residence in response to a "shots fired" call. He arrived to find the four women waiting in a car parked in the roadway. One of the women complained to the officer that Hudson had fired upon them; Hudson and two of her friends were standing in the front yard of the house, and they complained to the officer that they wanted the four women to leave the front of their property. The four victims complied with the officer's command to leave the scene. Shortly thereafter, they discovered a bullet lodged in the driver's door of the car, and the car's owner immediately showed it to a detective at the sheriff's department.

The state's witnesses gave an account of the events that led to the shooting. About 2:00 that morning, an argument at a bar escalated to a scuffle involving Hudson and her two friends on one side and Mann, Shomanda Sanders, and Wyconda Sanders on the other side. Hudson struck two of the women before the brawl was broken up by bouncers, who ejected the women from the bar.

Within an hour, however, the disputing sides encountered each other in a Waffle House parking lot. Mann, Shomanda Sanders, and Wyconda Sanders were joined by Lagare. Hudson and her friends began threatening the other side. The four victims drove away in Mann's car. They soon noticed, however, Hudson and her two friends first tailgating them, and then swerving around Mann's car to park in the driveway of a residence, which would soon become the crime scene.

Lagare testified that Mann stopped the car in the middle of the street in front of the residence, planning to ask Hudson and her friends "what was all that for." Lagare and her friends got out of the car and waited in the roadway.

A verbal exchange ensued between the sides. In the midst of this exchange, Hudson's friend, who had gone into her house, emerged with a gun, warned the women in the street to leave, then handed the gun to Hudson. Hudson aimed the gun at the women who had

remained in the street and twice discharged it. None of the four women had a weapon. Frightened by the gunfire, they scurried into Mann's car. One of them immediately dialed 911, and another attempted to shield their bodies with a cardboard box until the responding deputy sheriff arrived.

The state also introduced evidence of events that occurred after the shooting incident. About a week later, Hudson and her same two friends drove past the home of Lagare's mother. Lagare and Shomanda Sanders were sitting on the front porch. The car turned around, sped across the front yard, then crashed into a tree; the occupants fled on foot.

A few days after the tree incident, Mann and Wyconda Sanders observed Hudson in a car following them. Concerned about the apparent ongoing nature of Hudson's behavior, Mann initiated a formal complaint against Hudson at the sheriff's department.

The next day, Hudson was arrested and waived her *Miranda* rights. Regarding the shooting incident, she explained to a sheriff's office detective that she had fired the gun to scare away the women in the street. Hudson also admitted that she and her friends were trying to scare Lagare and Shomanda Sanders when they drove through the yard, but her friend lost control of the car and crashed into a tree.

Hudson was the sole defense witness at her trial. She denied any involvement in the verbal and physical altercation at the bar and denied making threats at the Waffle House. She testified that Lagare's sister, who was with the four women at the Waffle House, had a crowbar; and that after she (Hudson) and her friends left the Waffle House, the four women followed them to her friend's residence, exited their car, and some of them waved crowbars. Hudson recounted that, as the two sides exchanged threats, she was afraid for everyone's safety, and wanted the women to leave. She admitted, however, that the four women had remained in the street and did not have a gun. Hudson testified that when her friend handed her a gun, "I fired it in the air because there was a lot of commotion going on. I was trying to scare them. I didn't want anybody to get hurt nor myself." She testified that, when she discharged the two shots, she was standing near the front of the driveway, did not point the gun at anyone, and intended to shoot no one. On cross-examination of the sheriff's office detective, Hudson's attorney elicited testimony that there had been no ballistics testing on the bullet extracted from the driver's door of Mann's car.

1. Hudson contends that the trial court erred by not ordering a mistrial when one of the four aggravated assault victims testified that she and her friends had encountered a man in the parking lot who advised them to leave because Hudson and the girls she was

with were "trouble." Hudson claims that this label impermissibly placed her character in issue. The trial transcript reveals that Hudson's lawyer immediately objected to the characterization as hearsay, upon which the trial court told the jury, "All right. Ladies and gentlemen, please disregard the statement that the witness just related from the man that said that the defendant — well, that — said that the girls were trouble. That would be hearsay." Hudson's trial lawyer responded, "Thank you, Judge." On appeal, Hudson asserts that the trial court's curative instruction failed to "un-ring the bell" and that the court should further have granted a mistrial. But because the defense did not move for a mistrial, this contention is deemed waived.[1]

2. Hudson contends that the trial court erred by rejecting her written request for a jury instruction on reckless conduct as a lesser included offense of aggravated assault.[2] She cites her testimony that she did not intend to injure anyone, but fired the gun in the air merely as warning shots.

Pursuant to OCGA § 16-5-21 (a), aggravated assault is committed when a person "assaults: (1) With intent to murder, to rape, or to rob; [or] (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." "Assault" is defined in OCGA § 16-5-20 (a): "A person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury."

Although Hudson cites her testimony that she did not intend to injure anyone, the state was not required to show that she intended any injury, because she was charged with committing aggravated assault by using a gun to commit an act which placed others in reasonable apprehension of immediately receiving a violent injury.[3] Regarding Hudson's discharge of the gun, "the only evidence was that [she] committed an act intending to place [the four women] in reasonable apprehension of immediately receiving a violent injury and that [she] did so with a deadly weapon."[4] According to Hudson's

---

[1] See *Woodham v. State*, 263 Ga. 580, 582 (3) (439 SE2d 471) (1993); *Davis v. State*, 281 Ga. App. 855, 862 (6) (637 SE2d 431) (2006).

[2] See *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990) (a written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense).

[3] See *Matthews v. State*, 224 Ga. App. 407, 408 (1) (481 SE2d 235) (1997) (intent to injure is not an element of aggravated assault with a deadly weapon when the assault element is predicated on OCGA § 16-5-20 (a) (2)).

[4] *Stobbart v. State*, 272 Ga. 608, 611 (3) (533 SE2d 379) (2000) (citations and punctuation

trial testimony and her police statement, as well as the testimony of the state's witnesses, Hudson intentionally discharged the gun. Hudson claimed that she did so to scare away the four women. And the undisputed evidence showed that Hudson's intentional firing of the weapon placed the women in reasonable apprehension of immediately receiving violent injury. "[U]sing a deadly weapon to commit an act which places another in reasonable apprehension of immediately receiving a violent injury amounts to an aggravated assault, absent justification."[5]

Hudson's defense to the aggravated assault charges was justification. "That defense concedes that the defendant's act was intentional, but was committed for an excusable reason, such as self-defense."[6] Accordingly, Hudson was either guilty of aggravated assault as charged or not guilty by reason of justification.[7] Pretermitting whether reckless conduct was a lesser included offense of the aggravated assault charges,[8] "[w]here, as here, the evidence establishes either the commission of the completed offense as charged, or the commission of no offense, the trial court is not authorized to charge the jury on a lesser included offense."[9] Thus, the trial court did not err in refusing to give the requested instruction on reckless conduct.[10]

3. Hudson contends that the trial court erred by rejecting her claim of ineffective assistance of counsel.

---

omitted); see *Shaw v. State*, 238 Ga. App. 757, 759 (1) (519 SE2d 486) (1999) (explaining that "one can place another person in reasonable apprehension of violent injury by firing into the air as well as by firing at the victim"). As noted in *Shorter v. Waters*, 278 Ga. 558, 560, n. 1 (604 SE2d 472) (2004), *Shaw*'s special concurrence "did not dispute the analysis and result of the majority opinion."

[5] *Huguley v. State*, 242 Ga. App. 645, 648 (1) (a) (529 SE2d 915) (2000) (punctuation, footnote and emphasis omitted).

[6] *Berry v. State*, 282 Ga. 376, 381-382 (5) (651 SE2d 1) (2007) (citations and punctuation omitted).

[7] See *Stobbart*, supra.

[8] See generally *Shaw*, supra at 757-759.

[9] *Cotton v. State*, 274 Ga. 26, 27 (2) (549 SE2d 71) (2001) (citations omitted); see *Huguley*, supra ("Where the evidence shows either the completed offense, as averred, or no offense, such evidence will not support a verdict for one of the lesser included offenses.") (punctuation omitted).

[10] See *Stobbart*, supra (where the only evidence was that in pointing the pistol at victim, defendant did so intentionally, not "consciously disregarding a substantial and unjustifiable risk that his act or omission would cause harm or endanger [the victim's] safety. See OCGA § 16-5-60," the trial court properly refused to instruct the jury on reckless conduct); see *Anthony v. State*, 276 Ga. App. 107, 110 (3) (622 SE2d 450) (2005) (witness testimony that, in firing gun, the defendant may have been trying only to scare victim or may not have been aiming firearm directly at victim did not support argument that reckless conduct instruction was warranted, because such testimony provided evidence of defendant's intent to put victim in fear of bodily injury, as well as circumstantial evidence of victim's reasonable apprehension of injury); *Huguley*, supra at 648-649; *Shaw*, supra at 759.

To prevail on this claim, Hudson was required to show the trial court both that her counsel's performance was deficient and that the deficiency prejudiced her defense.[11] Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.[12] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review the trial court's legal conclusions de novo.[13]

Hudson specifically complains that her trial lawyer did not call as a witness one of her two friends. At the new trial hearing, that friend testified that the dispute at the bar had involved Hudson's two friends, but not Hudson. Hudson's friend further testified that any bullet later discovered in Mann's car could not have come from the gun Hudson fired, based upon the angle at which the car was parked and the location where Hudson was standing when she fired the weapon. According to Hudson, her friend's testimony would have shown that she had not pointed the gun at the four victims.

We find no merit in this contention. The state was not required to show that Hudson pointed the gun at anyone. The trial evidence undisputedly showed that Hudson intended to fire the weapon; that in firing the weapon, she intended to scare the four victims; and that Hudson's intentional firing of the weapon placed the victims in reasonable apprehension of immediately receiving violent injury. Nothing in Hudson's friend's testimony given at the new trial hearing refutes such evidence. Consequently, Hudson has shown no reasonable probability that, but for trial counsel's failure to call Hudson's friend as a witness, the outcome of her trial would have been different.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 17, 2009.

*Kimberly L. Copeland*, for appellant.
*Tom Durden, District Attorney, Henry P. Smith, Assistant District Attorney*, for appellee.

---

[11] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).
[12] *Suggs*, supra.
[13] Id.