303 Ga. 517
FINAL COPY

S18A0346. SOTO v. THE STATE.

PETERSON, Justice.

Armando Soto appeals his convictions for malice murder and other crimes in connection with the shooting death of Angelica Robledo.[1] Soto argues that the evidence was insufficient to support his malice murder conviction, the trial court erred in failing to charge on the lesser included offenses of reckless conduct and terroristic acts, and the trial court erred in denying his motions in limine to exclude the victim's statements about being harassed by a dangerous man and

---

[1] Robledo was killed on December 29, 2009. A Cobb County grand jury returned an indictment on March 26, 2010, charging Soto with malice murder, felony murder, aggravated assault as to another victim, two counts of possession of a firearm during the commission of a felony, and criminal damage to property in the second degree. Following a jury trial held in January 2013, the jury found Soto guilty of all charges. The trial court sentenced Soto to life imprisonment for malice murder, a consecutive twenty-year term for aggravated assault, and consecutive five-year sentences for the two firearm counts and the criminal damage to property offense; the trial court purported to merge the felony murder count, which was actually vacated by operation of law. See Favors v. State, 296 Ga. 842, 847-848 (5) (770 SE2d 855) (2015). On May 14, 2015, the trial court denied Soto's motion for new trial, as amended. Soto filed a timely notice of appeal, and his case was docketed to this Court's term beginning in December 2017 and submitted for a decision on the briefs.

to exclude evidence about his immigration status. We conclude that the evidence was sufficient to support Soto's convictions and that the trial court did not err in refusing to charge on the lesser included offenses. We also conclude that any evidence that was admitted as a result of the trial court's allegedly erroneous denial of Soto's motions in limine did not affect the outcome of the trial. Therefore, we affirm.

Viewed in the light most favorable to the jury verdicts, the trial evidence showed the following. The victim, Angelica Robledo, was estranged from her husband when she began working for Soto installing carpet. Soto pursued a romantic relationship with Robledo and harassed and threatened her. Soto routinely followed her in his white van, bumped her car from behind at least once, pointed a gun at her after she got off work, called her incessantly, and told her that she would not be with anyone if she would not be with him. He also scratched an epithet onto Robledo's car, causing more than $500 in damage.

Robledo told her friends and cousin about the harassment and threats. Robledo told one friend, Juan Arriaga, about some of the incidents, but she refused to identify the assailant to Arriaga or make a police report. Robledo also declined to contact the police due to her immigration status. Instead of

contacting the police, Robledo changed her phone number and asked roommates to meet her outside her residence when she got off work.

On the morning of December 29, 2009, Robledo called Arriaga for a ride so that she could pay her car insurance. After Robledo made the payment, Arriaga drove her to work. When they arrived in the parking lot, Soto was waiting in his white van. Robledo told Arriaga that the driver of the van was the person who had been following and threatening her and that the driver was obsessed with her and wanted to be her boyfriend. Nervous, Robledo asked Arriaga to drop her off right in front of the store where she worked. When Robledo got out of the vehicle, Soto pulled in front of Arriaga's vehicle and began shooting at Robledo. She was hit six times, including several times in the back. Soto then fired at Arriaga, hitting the door and the front of Arriaga's vehicle. Arriaga ducked down and drove away, hitting several cars in the parking lot.

Police responded to the shooting and found Arriaga injured and Robledo unresponsive. Robledo was taken to a hospital, where she died as a result of her gunshot wounds. A number of .380 shell casings and a .380 bullet were recovered from the crime scene, a .380 bullet was found on the gurney on which

3

Robledo was transported to the hospital, and a .380 bullet was later removed from Robledo's body during the autopsy. The police put out a be on the lookout ("BOLO") for a person matching Soto's description and his white van.

Meanwhile, Soto went home to pack a few items before leaving Atlanta and driving west through Alabama and Mississippi. A Mississippi police officer who received the BOLO report later stopped and arrested Soto. Police searched the van and found a Llama .380 handgun, .380 rounds, and three shell casings. A GBI firearm examiner determined that the .380 shell casings and bullets recovered from the crime scene and autopsy were fired from Soto's Llama .380 handgun.

Soto testified at trial and said that he and Robledo had been dating for about three years until her death. Soto admitted shooting Robledo, but disputed that he shot her in the back. He claimed that he shot Robledo because she meant everything to him and he became jealous and angry after seeing her embrace and kiss another man. Soto denied ever threatening Robledo and claimed that he supported her financially and would follow her home at her request after she had been drinking because she was afraid of being stopped by the police. Soto also

4

claimed that he shot at Arriaga because he thought Arriaga was leaning down to retrieve a gun.

1. *The evidence was sufficient to sustain Soto's convictions.*

Soto argues that the evidence supported only a conviction for voluntary manslaughter, not malice murder, because he shot at Robledo only upon becoming overwhelmed with jealousy after seeing her embrace and kiss another man. He argues that the State's claim that he lay in wait and planned the murder meticulously was belied by surveillance video showing that the events happened quickly and by evidence that he left Atlanta with little money and made no effort to disguise himself.

Voluntary manslaughter requires some evidence that the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a). Although sexual jealousy can be provocation sufficient to warrant a conviction for manslaughter even where the defendant and the victim are not married, see Culmer v. State, 282 Ga. 330, 335 (4) (647 SE2d 30) (2007), it is for the jury to determine whether the actions alleged to have provoked the defendant actually occurred and whether these actions were

5

sufficient provocation to excite the deadly passion of a reasonable person. See Clough v. State, 298 Ga. 594, 596-597 (2) (783 SE2d 637) (2016). Even if there were some provocation, however, it is not enough that "the provocation was sufficient to excite the deadly passion in the particular defendant"; this is both a subjective and objective standard, as the jury must also conclude that the provocation would excite a *reasonable* person. Bailey v. State, 301 Ga. 476, 480 (IV) (801 SE2d 813) (2017) (citation and punctuation omitted).

It is undisputed that Soto intentionally shot Robledo. Although Soto claims that he shot Robledo because he was driven into a rage by seeing the woman he loved embrace and kiss another man, Arriaga testified that he did not have a romantic relationship with Robledo and that she merely shook his hand before exiting his vehicle. But even if Arriaga and Robledo did embrace and kiss, the jury was nevertheless authorized to conclude that such provocation would not have excited a reasonable person to kill. Given the evidence, including evidence of prior difficulties between Soto and Robledo, the jury was authorized to conclude that Soto was not acting solely as the result of a sudden, violent, and irresistible passion, but that he shot Robledo with malice.

6

To the extent Soto also challenges his conviction for aggravated assault of Arriaga,[2] the evidence was also legally sufficient. Soto now claims that the act of shooting at Arriaga was merely negligent, and thus constituted either reckless conduct or terroristic acts, because he only shot at Arriaga's truck in an attempt to scare Arriaga so that Soto could flee. But Soto's testimony was that he intentionally fired at Arriaga either to repel an attack or to scare Arriaga so that Soto could escape. And he concedes that his actions as to Robledo at least constituted voluntary manslaughter, a felony. That precludes Soto from claiming self-defense, because a person is not justified in using force when he is fleeing after the commission or attempted commission of a felony. See OCGA § 16-3-21 (b) (2). As a result, and as we explain in more detail in Division 2 below, the jury was authorized to conclude that Soto's intentional firing at Arriaga constituted the offense of aggravated assault.  See Anthony v. State, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016).

---

[2] Soto appears to actually argue only that he could not be guilty of felony murder because the evidence was insufficient that he committed an aggravated assault on Arriaga. But the felony murder verdict, which was vacated by operation of law, was based on the uncharged aggravated assault of Robledo, not the aggravated assault of Arriaga for which he was convicted.

7

2. *The trial court did not err in denying Soto's requested charges on reckless conduct and terroristic acts for shooting at a vehicle.*

Soto argues that the trial court erred in denying his requests to charge the jury on reckless conduct and terroristic acts, because they were lesser included offenses of aggravated assault. We disagree because the evidence did not support the requested charges.

"[A] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." Shah v. State, 300 Ga. 14, 19 (2) (793 SE2d 81) (2016) (citation and punctuation omitted). The evidence that the defendant committed the lesser offense "does not need to be persuasive, but it must exist." Daniel v. State, 301 Ga. 783, 785 (II) (804 SE2d 61) (2017). A trial court is justified in refusing to charge on the lesser offense where there is no evidence that the defendant committed a lesser offense. Edwards v. State, 264 Ga. 131, 132 (442 SE2d 444) (1994).

(a) *There was no evidence of reckless conduct.*

Soto argues that because he was firing his weapon only at Arriaga's truck, rather than at Arriaga directly, there was evidence to support a charge on reckless conduct. That claim has no merit.

Soto was charged with aggravated assault with a deadly weapon, which required a showing that he committed an assault on a victim and that the assault was aggravated by the use of a deadly weapon. See Knox v. State, 261 Ga. 272, 274 (3) (404 SE2d 269) (1991). A person commits a simple assault when he either: (1) attempts to commit a violent injury to the person of another; or (2) commits an act that places another in reasonable apprehension of immediately receiving a violent injury. See OCGA § 16-5-20 (a); see also Knox, 261 Ga. at 274 (3). Because reckless conduct is an act of criminal negligence that causes bodily harm or endangers the bodily safety of another, see Lindsey v. State, 262 Ga. 665, 666 (2) (b) (424 SE2d 616) (1993), it may be a lesser included offense of aggravated assault by attempting to injure, see State v. Springer, 297 Ga. 376, 377 (1) (774 SE2d 106) (2015). But a charge on reckless conduct is warranted only when there is evidence that the defendant acted negligently. See Stobbart v. State, 272 Ga. 608, 611 (3) (533 SE2d 379) (2000).

In this case, Soto testified that he intentionally shot at Arriaga or at Arriaga's truck (while Arriaga was in it), and that he did so either to defend himself or to place Arriaga in fear of harm. As we explained above, Soto was not entitled to claim justification given that he shot at Arriaga while attempting to flee after the commission of a felony. Because there was no evidence that Soto was simply negligent in firing his gun at Arriaga, the evidence established only that Soto intended to commit an act that placed Arriaga in reasonable apprehension of immediately receiving a violent injury, which amounted to aggravated assault. Stewart v. State, 299 Ga. 622, 626 (2) (a) (791 SE2d 61) (2016); Stobbart, 272 Ga. at 611 (3). Consequently, the trial court did not err in refusing to give the requested jury charge on reckless conduct. See Berry v. State, 282 Ga. 376, 382 (5) (651 SE2d 1) (2007) (jury charge on reckless conduct not supported by evidence that defendant intentionally committed the act, as reckless conduct involves criminal negligence).

(b) *Terroristic acts was not a lesser included offense of the aggravated assault of Arriaga.*

Soto argues that his shooting of Arriaga's moving vehicle constituted the offense of terroristic acts and that this was a lesser included offense of aggravated assault. We disagree.

Under OCGA § 16-1-6 (1), a lesser crime is "included in" the greater where "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of [the other crime]." In determining whether one crime is included in the other, we apply the "required evidence" test adopted in Drinkard v. Walker, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, the question is not whether the evidence presented at trial establishes the elements of the lesser crime, but whether each offense requires proof of a fact that the other does not. Lucky v. State, 286 Ga. 478, 481 (689 SE2d 825) (2010).

As charged, the State could secure a conviction on aggravated assault by proving that Soto committed an assault in either manner contained in the simple assault statute, so long as the State also proved that he did so through the use of a gun. See Simpson v. State, 277 Ga. 356, 358 (3) (589 SE2d 90) (2003); Knox,

11

261 Ga. at 274 (3). Proving either type of simple assault — attempting to injure the victim or committing an act that places the victim in fear of harm — requires proof different from that required to sustain a conviction for terroristic acts. A person commits the offense of a terroristic act when that person, while not in the commission of a lawful act, "shoots at . . . a conveyance which is being operated or which is occupied by passengers[.]" OCGA § 16-11-37 (b) (2) (2002).[3] This type of terroristic act requires proof that a person shot at a conveyance that is being operated or is occupied by passengers, and such proof is not required to establish a simple assault. Because the offense of terroristic acts for shooting at a conveyance requires proof of a fact that the offense of aggravated assault does not, the crime of terroristic act is not a lesser included offense of aggravated assault. Therefore, Soto was not entitled to his requested jury charge. See State v. Hightower, 252 Ga. 220, 223 (312 SE2d 610) (1984) ("[W]here the defendant is charged . . . with a specific crime it is not within the power of the judge or the jury to interpret the facts as presented at trial to support an alternative, separate offense."); State v. Stonaker, 236 Ga. 1, 2-3 (222 SE2d 354) (1976) (it is not

---

[3] This provision is now OCGA § 16-11-37 (c) (2); the current subsection (a) was added in 2016.

12

error to fail to charge on an unindicted crime that is not a lesser included offense).

3. Soto next argues that the trial court erred in denying his motions in limine regarding evidence that Robledo was involved with a dangerous man who had ties to gangs. His claim is without merit.

It is difficult to understand the nature and scope of Soto's argument because his record citations do not match his arguments. As the District Attorney points out, Soto does not identify which of his many motions in limine sought to exclude evidence that Robledo was with a dangerous man with gang ties, nor could we locate such a motion. Soto does provide record cites regarding the denial of certain motions in limine, but these referenced motions make no mention of a dangerous man with gang ties. Instead, the referenced motions sought to exclude only Arriaga's statements to police that the shooter was in love with Robledo and that, while Robledo and Arriaga were in the parking lot prior to the shooting, Robledo told Arriaga that she once worked with the man in the white van that was also in the parking lot, the man wanted to be her boyfriend, and the man had been following her and bothering her.

13

Although Soto argues that "several witnesses" were able to testify about Robledo being with a dangerous man with gang ties, he provides record cites only to parts of Arriaga's testimony,[4] which is all that we will review on appeal. See Wallace v. State, 296 Ga. 388, 392 (4) (b) (768 SE2d 480) (2015) (it is not this Court's responsibility to cull the record in search of support for the appellant's claims); Westmoreland v. State, 287 Ga. 688, 696 (10) (699 SE2d 13) (2010) ("[T]he burden is always on the appellant in asserting error to show it affirmatively by the record." (citation and punctuation omitted)).

The cited testimony of Arriaga relates to Arriaga's refusal to identify the shooter, which did not explicitly address Robledo's romantic involvement with a man who had gang ties. In that testimony, Arriaga said that he would be able to recognize the man who shot him, but refused to identify the shooter, stating

---

[4] Soto also references the testimony of Edith Gonzalez and a detective. Although he does not provide record citations to the parts of Gonzalez's testimony that he finds objectionable, we note that Gonzalez, who in addition to being Robledo's cousin also considered herself a good friend, testified that Robledo never mentioned that she and Soto were romantically involved. As a result, it is highly unlikely the jury would infer from Gonzalez's testimony that Robledo was "with" Soto, much less dating a "dangerous man."

Soto does provide a record cite to the detective's testimony regarding the confusing nature of Arriaga's interview such that it was not always clear whether Arriaga was referring to Soto or Robledo's estranged husband. But Soto does not challenge the admission of the detective's statements. Instead, he uses the testimony to bolster his argument that, although there was no evidence linking him to a gang, the jury may have confused him with Robledo's estranged husband who Soto alleges was linked to a dangerous gang.

14

"I don't want to risk with my life because I don't want him to send somebody to kill me if he knows that I am here."

Soto did not object to this testimony, and this testimony was not the subject of any of the referenced motions in limine. Therefore, his challenge to Arriaga's testimony is reviewed for plain error only. See OCGA § 24-1-103 (d). To establish plain error, Soto

> must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

Lupoe v. State, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016) (citation and punctuation omitted). To demonstrate that a clear or obvious error affected his substantial rights, Soto must establish that the error affected the outcome of the proceedings. Booth v. State, 301 Ga. 678, 680 (2) (804 SE2d 104) (2017).

Even assuming the trial court erred in admitting Arriaga's unsolicited statement that he was afraid of identifying the shooter because the shooter might send someone to kill him, such error would not require reversal. There was no dispute that Soto intentionally shot Robledo and Arriaga, and his claims of justification were unlikely to have persuaded a jury even in the absence of

15

Arriaga's comments, given Soto's repeated harassment of and threats to Robledo and his inconsistent testimony as to whether he intentionally shot at Arriaga or was merely shooting at Arriaga's truck. Given the strong evidence of guilt, Soto cannot show that Arriaga's brief, unsolicited statement affected the outcome of the trial.

4. Soto next argues that the trial court erred in admitting evidence of his fake driver's license and consular identification card that were recovered during a search of his residence, because the State was attempting to put his character at issue by revealing his immigration status. This argument also has no merit.

Any error in admitting the evidence was harmless. To establish nonconstitutional harmless error, the State has the burden to show that it was highly probable that the error did not contribute to the verdict. Bozzie v. State, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017). Soto argues that the documents highlighted his immigration status and any reference to his immigration status was improper because he had not placed his character into evidence. See Sandoval v. State, 264 Ga. 199, 200 (2) (a), (b) (442 SE2d 746) (1994).

Evidence that Soto was issued a consular identification card, along with the fact that he had a fake driver's license, may have created an inference that

16

Soto did not have legal status in this country, but as was true in Sandoval, any error in admitting this evidence was harmless. See Sandoval, 264 Ga. at 201 (2) (c). The evidence against Soto was strong, and the reference to the challenged documents was brief. When introducing the consular identification and driver's license through a police officer's testimony, the State did not specifically ask about the significance of the documents or whether they were authentic, although the officer noted several discrepancies. Only during its cross-examination of Soto did the State elicit testimony that the driver's license was fake. Soto claimed that he acquired the fake driver's license when he tried to renew his driver's license but someone on the internet defrauded him. When the State asked Soto why he did not renew his license through the government, defense counsel objected. After a conference outside the presence of the jury, the trial court instructed the State to avoid Soto's immigration status. Soto does not point to any evidence that his immigration status was ever specifically referenced thereafter. Under these circumstances, we conclude that it is highly probable that any error in admitting the documents did not contribute to the verdict. Id. at 200-201 (2) (c) (admission of evidence regarding defendant's immigration status was harmless where there was overwhelming evidence of

17

guilt, the State framed question in non-accusatory manner, and there was a lack of further comment by the State on the defendant's immigration status).

Judgment affirmed. All the Justices concur.

Decided April 16, 2018.

Murder. Cobb Superior Court. Before Judge Flournoy.

James W. Gibert, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, John R. Edwards, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.