In the Supreme Court of Georgia

Decided:    June 16, 2014

S14A0367.  JOHNSON v. THE STATE.

BENHAM, Justice.

Appellant Robert Mumford Johnson appeals his conviction and sentencing

to life imprisonment for the felony murder of his wife, Mary Ellen Johnson,

predicated upon aggravated assault.[1]  For the reasons set forth below, we affirm.

1.    Viewed in the light most favorable to the verdict, the evidence

presented at trial showed as follows:  Appellant and his wife had been married

for 48 years but, at least in the later years of the marriage, they had a tumultuous

relationship and frequently fought.  The morning of October 31, 2009, the two

got into an argument, and the couple's son saw appellant choking the victim

---

[1]  The crimes occurred on October 31, 2009.  On January 27, 2010, a Chatham County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault), aggravated assault of Mary Ellen Johnson, and aggravated assault of Nathaniel Harris. Appellant was tried June 26- 27, 2012, and a jury acquitted him of malice murder and aggravated assault of Nathaniel Harris, but found him guilty of the other charges.  For purposes of sentencing, the felony murder and aggravated assault convictions were merged and the trial court sentenced appellant to life in prison.  Appellant moved for new trial on July 10, 2012, which was amended June 14, 2013.  After a hearing, the trial court denied appellant's motion for new trial on August 23, 2013. Appellant filed a timely notice of appeal on September 23, 2013, and the case was docketed in this Court to the January 2014 term for a decision to be made on the briefs.

outside the house. After their son intervened, the victim started packing clothes to leave. The victim's brother, Nathaniel Harris, arrived and the victim went outside crying saying she wanted to get her clothes out of the house but would not do so until the police arrived. Upon hearing this statement, appellant threatened to kill the victim for calling the police, went inside, and came out with a rifle. Harris attempted to persuade appellant to put the gun back in the house but, in response, appellant turned the gun on Harris. The victim was heard telling appellant she had not actually called the police, and the victim and appellant talked for a while. Then Harris heard a shot, went around to the other side of a van where the two had been talking, and discovered the victim had been struck by a bullet.

Appellant fled the scene in an SUV which was spotted shortly thereafter at a gas station by the police officer who was responding to the call about the shooting. When the police officer approached him and asked what was going on, appellant stated, "She pissed me off, man." A rifle was found behind the back seat of the SUV. After appellant was taken into custody and the interviewing officer read him his rights, appellant made other inculpatory statements, and the videotaped interview was played at trial. Appellant stated

2

that the victim had picked at him all his life, that nothing he accomplished was ever good enough for her, and that on the morning of the shooting she had been calling him names. Appellant stated that when she started gathering her clothes to leave, he grabbed her by the neck and shook her. He admitted that upon hearing the victim claim she had called the police, he retrieved the rifle to scare her. He admitted he told her "I'm going to give you something to call the police for," and he claimed that as he went around the side of the van toward his wife, he stumbled and the gun "just went off." Expert testimony established that the weapon was in good condition and it took approximately one and a quarter pounds of pressure to pull the trigger. While being questioned by the police, appellant agreed the rifle did not have a hair trigger and that it is "harder to pull the trigger." The evidence showed that after appellant shot the rifle, he operated the lever to eject the shell casing and also caused another round to be loaded into the chamber before he put the rifle into his SUV and left the scene. The victim died from a gunshot wound to her upper right chest.

At trial, appellant's defense was that the shooting occurred as the result of a sudden irresistible passion, and that he was thus not guilty of malice murder or felony murder but should be convicted only of the lesser included offense of

3

voluntary manslaughter. The evidence was sufficient to authorize a rational jury to find appellant guilty beyond a reasonable doubt of felony murder. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. The felony murder count of the indictment accused appellant of unlawfully causing the victim's death "while in the commission of a felony, to wit: Aggravated Assault, by shooting her . . . ." The trial court instructed the jury that if it found "beyond a reasonable doubt that the defendant committed the homicide alleged in this Bill of Indictment at the time the defendant was engaged in the commission of the felony of aggravated assault, then you would be authorized to find the defendant guilty of murder, whether the homicide was intended or not." The aggravated assault count accused appellant of assault "with a deadly weapon, to wit: a gun." In its instruction to the jury, the trial court correctly charged that aggravated assault is committed when a person assaults another with a deadly weapon, and that a firearm, when used as such, is a deadly weapon as a matter of law. It further charged: "To constitute such an assault, actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant intentionally committed an act that placed the victim in reasonable fear of

4

immediately receiving a violent injury." Thus, with respect to the definition of simple assault, it is apparent that the trial court instructed the jury only on the method of committing assault set forth in OCGA § 16-5-20 (a) (2), and did not instruct the jury that assault can be committed by attempt to commit a violent injury, pursuant to OCGA § 16-5-20 (a) (1). Appellant argues that because the felony murder count included the phrase "by shooting her," conviction on this count required a finding of assault pursuant to OCGA § 16-5-20 (a) (1), by attempt to commit a violent injury. Since the trial court did not instruct the jury on that method of committing assault, appellant asserts the conviction must be reversed because this created a fatal variance between the method of assault alleged in the indictment and the way in which the jury was instructed, thereby denying him due process of law.

Appellant's trial counsel, however, failed to raise an objection to the trial court's instruction on the offense of aggravated assault as the predicate offense for the murder count. Consequently, unless plain error is shown by the instructions, appellate review is precluded pursuant to OCGA § 17-8-58. In order to establish plain error, an appellant must satisfy the burden of establishing all four elements of the four-pronged test set forth in *Shaw v. State*,

5

292 Ga. 871, 873 (2) (742 SE2d 707) (2013):

> [A] failure to charge amounts to plain error only to the extent that the failure to charge was erroneous, the error was obvious, the failure to charge likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

(Citation and punctuation omitted.) Appellant argues that the felony murder accusation, by including the phrase "by shooting her," requires a showing, along with instructions, that he committed the underlying assault by attempting to commit a violent injury to the victim, as defined by OCGA § 16-5-20 (a) (1). Even assuming the trial court's instructions were erroneous in this respect, however, appellant has failed to show that this error likely affected the outcome of the proceedings. At the commencement of its instructions to the jury, the trial court stated: "You will have the indictment with you at the end of the case and you should consult it for the specific allegations brought by the State." The trial court further instructed: "The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." The felony murder count of the indictment described the underlying felony as aggravated assault "by shooting her." The jury returned a guilty verdict with respect to that count. There was

6

no dispute that the victim died as a result of being shot by appellant's rifle. It follows that the jury found the appellant committed the felony of aggravated assault by shooting the victim, thereby causing her death, and thus found all the elements of the aggravated assault count that were alleged in the indictment. Appellant has failed to show that the charging error affected the outcome of the proceedings at trial and thus has failed to satisfy the burden of proving the third and fourth prongs of the four-pronged test for establishing plain error. Accordingly, we reject appellant's second and third enumerations of error.

3. (a) Appellant asserts he was denied effective assistance of counsel on two grounds. First, appellant asserts he received constitutionally ineffective assistance of counsel as a result of counsel's failure to object to the trial court's erroneous instruction on aggravated assault as a predicate for the felony murder count of the indictment. To prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exits that, but for counsel's errors, the outcome of the trial would have been different.

(Citation and punctuation omitted.) *Barge v. State*, 294 Ga. 567, 569 (2) (755 SE2d 166) (2014). For the reasons set forth in Division 2, we conclude the

court's instruction did not amount to plain error requiring the conviction to be reversed because appellant failed to show that the alleged charging error affected the outcome of the proceedings. Likewise, we conclude appellant has failed to show ineffective assistance of counsel as a result of counsel's failure to object to the jury charge which, even if erroneous, did not affect the outcome of the proceedings. Compare *Fouts v. State* 322 Ga. App. 261, 268 (4) (b) (744 SE2d 451) (2013) (finding no likelihood that the omission of a specific charge on criminal negligence affected the outcome of the trial and that there was thus no plain error, and, accordingly, finding that the appellant failed to show that trial counsel's failure to request such a charge fell outside the range of reasonable professional conduct and thus failed to show counsel was ineffective on this ground).

(b) Appellant also asserts he was denied effective assistance of counsel as a result of counsel's failure to request a charge on involuntary manslaughter based upon reckless conduct as a lesser included offense of the malice murder and felony murder counts. In support of this assertion, appellant points to his custodial admission that he got out his rifle to scare the victim and that as he went around the van toward her, he stumbled and the gun "just went off"

accidentally. According to appellant, the evidence thus shows he committed an act of reckless conduct, as defined by OCGA § 16-5-60 (b), which would be the unlawful act other than a felony that caused the death of the victim that would justify a charge on involuntary manslaughter pursuant to OCGA § 16-5-3 (a).[2] This is incorrect. Appellant's admission that he came at the victim with a gun to scare her established that "he was, at the very least, engaged in the commission of an aggravated assault when the gun fired." *Brooks v. State*, 262 Ga. 187, 188 (3) (415 SE2d 903) (1992); see also *Rhodes v. State*, 257 Ga. 368 (6) (359 SE2d 670) (1987) (appellant's act of using a deadly weapon in such a manner as to place the victim in reasonable apprehension of immediate violent injury constituted the felony of aggravated assault and thus he was not entitled to a jury instruction on involuntary manslaughter). Appellant's admission established he committed a felony and not a non-felonious unlawful act. Likewise, this admission established appellant did not commit a lawful act in an unlawful manner, justifying a charge on involuntary manslaughter pursuant to

---

[2] Pursuant to OCGA § 16-5-3 (a):
A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony.

OCGA § 16-5-3 (b).[3] "Inasmuch as a jury charge on involuntary manslaughter was not warranted, trial counsel cannot be found ineffective for failing to request it." *Williams v. State*, 279 Ga. 600, 603 (3) (b) (619 SE2d 649) (2005).

Judgment affirmed. All the Justices concur.

---

[3] Pursuant to OCGA § 16-5-3 (b):
A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm.