**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: November 5, 2024

S24A1356. GUDE v. THE STATE.

MCMILLIAN, Justice.

Appellant DeRon Edrias Gude was convicted of felony murder and other charges in relation to the shooting death of Nyyokokie Hendley.[1] On appeal, Gude argues that the trial court committed

---

[1] Hendley died on October 11, 2016. On January 25, 2018, a DeKalb County grand jury indicted Gude for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault (Count 4), possession of marijuana with intent to distribute (Count 5), possession of a firearm during the commission of a felony (Count 6), and possession of a firearm by a convicted felon (Count 7). At a trial from December 17 through 21, 2018, the trial court granted Gude's motion for a directed verdict of acquittal on the marijuana charge, and the jury found Gude not guilty of malice murder but guilty on all the remaining counts. The trial court sentenced Gude to serve life in prison for felony murder predicated on aggravated assault, plus a consecutive five years for possession of a firearm during the commission of a felony; the other counts were vacated by operation of law or merged for sentencing purposes. See *Dixon v. State*, 302 Ga. 691, 698 (808 SE2d 696) (2017) ("[W]hen a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances.").

plain error in its jury charge on aggravated assault and that his trial counsel rendered ineffective assistance by failing to object to that instruction. For the reasons that follow, we affirm.

The evidence presented at trial showed the following. Gude had begun dating Hendley a little more than a month before her death. On October 11, 2016, at 9:41 p.m., Gude called 911 from his home and told the operator that he'd "like to report a shooting," "[i]t was a fight and the gun went off," and Hendley landed on the gun after being shot. Officers responded, and Gude directed them where Hendley lay, dead from a gunshot to the head. Officers recovered a 9-millimeter handgun belonging to Hendley near her feet, which was loaded with .380-caliber rounds; live and spent .380-caliber shell casings; and an unlocked safe containing marijuana and money.

---

Gude filed a timely motion for new trial on December 26, 2018, which was amended by new counsel on August 18, 2023. Following a hearing on November 6, 2023, the trial court denied Gude's motion for new trial, as amended, on November 9, 2023. Gude filed a timely notice of appeal on December 6, 2023, and the case was docketed to the August 2024 term of this Court and thereafter submitted for a decision on the briefs.

Officers transported Gude to police headquarters where he waived his rights under *Miranda*[2] and was interviewed by police. Gude told officers that Hendley had called him earlier that day, accused him of being with another woman, and threatened to shoot him in the head. When he arrived home, Hendley slapped him and put a gun to his head before she started damaging his property inside the condominium. When Gude insisted Hendley leave, she cocked the gun and pointed it at him, so he "rushed her with both hands out hitting the hand with the gun and her arm at the time. The gun went off, fell to the ground. [He] looked to see if she was hit and then called 911 and waited outside for police." Gude's police interview was audio recorded and played for the jury at trial. Gude also provided a handwritten statement of this account to officers.

At trial, a female friend of Gude's testified that Gude was at her townhouse working on her car on the afternoon of October 11. She noticed Gude's phone ringing more than usual and that he

---

[2] See *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

seemed upset, telling her that he needed to go home. At one point, after looking at his phone, Gude told the friend that the surveillance cameras at his home were disabled. She agreed to drive Gude home and on the way, she stopped for gas not far from Gude's home. Gude got out of the car and said, "I have to go deal with this crazy b**ch," "that's at my house," and he walked home from there.

Gude testified in his own defense at trial, where he provided a different version of events than the version he had provided to the police. At trial, Gude testified that he had been working on the car for his female friend on October 11 and that Hendley started texting and calling him, asking, "Who the f**king car you working on? . . . Who is that b**ch you with?" His friend drove him toward his apartment. During the drive, he tried to check his home surveillance cameras on his cell phone but noticed that "they were off"; when his friend stopped for gas, he told her, "I got a crazy b**ch at my house and I need – I don't know what she's going to do," and he walked home from there. During the walk, he received a call from Hendley, who said, "don't play with my feelings. You come your a** here, I'll

put a bullet in your head." When Gude arrived home, Hendley punched him and put a gun to his head. Hendley didn't shoot Gude, but instead began destroying things in the home, and when she knocked several items off the coffee table, those items included a box that contained Gude's .380-caliber handgun. When Gude's gun fell out of the box, Hendley picked it up and threw it on a chair. Gude commented that Hendley had broken his tablet, and "[t]hen she said, 'That's all you give a f**k about?' And she went into a rage. . . . [S]he cocked the gun that she had. . . . And then the gun jammed." As Hendley's gun jammed, Gude retrieved his gun from the chair, and Hendley unjammed her gun. According to Gude:

> A. Then she raises the gun at me and as she raises the gun, then I fire.
> Q. One time?
> A. One time, yes.
> Q. Are you aiming or are you just firing?
> A. No, I just grabbed the gun and point it towards her and fire.
> …
> Q. Are you even aiming or you're – I mean, are your eyes closed? Do you know what – or you just –
> A. No.
> Q. – pulled the trigger?
> A. No. I just pulled the trigger.

Gude testified that he was about three feet away when he shot Hendley. Gude hid his gun under a chair because he was not supposed to possess it as a convicted felon, and he disposed of it in a dumpster after being released on bond.

Gude testified that when he shot Hendley, he feared for his life. When asked, "[a]t that point in time, did you have any reason to believe that you had to shoot Ms. Hendley to protect yourself?" Gude replied, "Yes. Most definitely." Gude further agreed that "it was either [him] or her" and that he did not have "any choice"; he testified, "I knew she was going to pull that trigger." Gude acknowledged that he initially lied to the police about what happened because he "didn't think they would believe it was self-defense." Near the end of his direct examination, when asked, "When you raised that gun and pointed it at Ms. Hendley, did you feel you had any choice?" Gude replied, "No. . . . Because it was – it was either me or her."

The medical examiner who performed Hendley's autopsy determined that she died from a single gunshot to the front of her

head, fired from no less than three feet away. A GBI firearms expert testified that it is possible to fire a .380-caliber bullet from a 9-milimeter gun, so "out of an abundance of caution," she compared the .380-caliber bullet removed from Hendley's head and a .380-caliber shell casing found at the scene with the 9-millimeter handgun also found at the scene and determined that the gun neither fired the bullet nor ejected the casing. The actual murder weapon was never recovered.

1. Gude contends that because he was charged with aggravated assault "by shooting" Hendley under OCGA § 16-5-20 (a) (1),[3] and he was sentenced on felony murder predicated on that aggravated assault, the trial court plainly erred by failing to instruct the jury that, to be guilty of aggravated assault, Gude must have "[a]ttempt[ed] to commit a violent injury," and, to the contrary,

[3] Count 2 of the indictment (felony murder predicated on aggravated assault) alleged that Gude, "while in the commission of the offense of Aggravated Assault, a felony, did cause the death of Nyyokokie Hendley, a human being, by shooting said person," and Count 4 (aggravated assault) alleged that Gude "did make an assault upon the person of Nyyokokie Hendley with a deadly weapon, to wit: a handgun, by shooting said person."

instructed the jury that "[i]t is only necessary that the evidence show, beyond a reasonable doubt, that the defendant intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury"—an uncharged method of committing aggravated assault.[4]

As Gude recognizes on appeal, because he did not object to the instruction at trial, his challenge is reviewed for plain error only. See OCGA § 17-8-58 (b). "Under plain error review, we will reverse the trial court only if the alleged instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely

---

[4] The trial court charged the jury:

> A person commits the offense of aggravated assault when that person assaults another person with a deadly weapon. To constitute such an assault, actual injury to the alleged victim need not be shown.
>
> It is only necessary that the evidence show, beyond a reasonable doubt, that the defendant intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent [in]jury.
>
> The State must also prove as a material element of aggravated assault, as alleged in this case, that the assault was made with a deadly weapon. A firearm, when used as such, is a deadly weapon as a matter of law.

affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Cato v. State*, 304 Ga. 496, 498 (2) (820 SE2d 41) (2018) (citation and punctuation omitted).

The alleged instructional error was not affirmatively waived. And we will assume without deciding that the trial court committed obvious error in instructing the jury on a method of aggravated assault not charged in the indictment. See id. But Gude has not met his burden of showing that the error likely affected the outcome of the proceedings. That is because, as our case law repeatedly has made clear, charging the jury on a method of committing a crime not charged in the indictment does not likely affect the outcome of the proceedings when the jury is also instructed—as it was here—that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt" and provided with a copy of the

indictment during deliberations.[5] See, e.g., id. at 498-99 (2); *Simpson v. State*, 302 Ga. 875, 877 (2) (808 SE2d 718) (2017); *Faulks v. State*, 296 Ga. 38, 38-39 (2) (764 SE2d 846) (2014); *Johnson v. State*, 295 Ga. 615, 617-18 (2) (759 SE2d 837) (2014); *Flournoy v. State*, 294 Ga. 741, 744 (2) (755 SE2d 777) (2014); *Williams v. Kelley*, 291 Ga. 285, 286-87 (728 SE2d 666) (2012).[6]

Moreover, under the circumstances of this case, it is highly unlikely that the jury convicted Gude of felony murder predicated on aggravated assault without a finding that Gude intended to shoot Hendley because it is undisputed not only that Gude actually shot and killed her, but also that Gude's defense at trial was that he shot

---

[5] The trial court further instructed the jury that "[t]he indictment and the plea form the issue that you are to decide in this case."

[6] We have previously explained that prior holdings on jury instruction issues that were not related to the Evidence Code were not abrogated by the enactment of Georgia's current Evidence Code in 2013. See *Rawls v. State*, 310 Ga. 209, 218-19 (4) (a) (850 SE2d 90) (2020) ("We have explained many times that we look to federal case law for guidance when a provision of Georgia's current Evidence Code mirrors a federal rule of evidence. But *Renner*'s holding was about *jury instructions*, not about the admission or exclusion of evidence.") (cleaned up).

Hendley in self-defense, on which the jury was charged.[7] See *Cato*, 304 Ga. at 498-99 (2) (reasoning that "the context of the instructions made the juror confusion suggested by [appellant] even more unlikely," where he was "charged with felony murder, the jury was properly instructed on felony murder, and there was no dispute that [the victim] died as a result of being shot (not as a result of being placed in fear)," meaning there was "no likelihood that the jury, in convicting [appellant] of felony murder, thought that the aggravated assault on which that charge was premised merely put [the victim] in reasonable apprehension of immediately receiving a violent injury"); see also *Johnson*, 295 Ga. at 618 (2); *Patel v. State,* 278 Ga. 403, 407 (5) (603 SE2d 237) (2004).

Despite this authority seemingly foreclosing Gude's challenge,

---

[7] Despite Gude's somewhat vague response when asked whether he was aiming at Hendley, Gude testified specifically: "I just grabbed the gun and point[ed] it towards her and fire[d]"; that he "[m]ost definitely" had reason to believe that he "had to shoot Ms. Hendley"; and that he did not have "any choice" when he "raised that gun and pointed it at Ms. Hendley" because "it was either me or her." Moreover, Gude's counsel argued in closing: "It's always been self-defense. It's just that in order to defend himself, he ended up having to kill her by shooting. . . . He intended to kill her when he shot her. Yeah, that's right. . . . He had to kill her. . . . He had to defend himself."

he argues that the reversal of the appellant's aggravated assault conviction in *Talton v. State*, 254 Ga. App. 111, 112-13 (1) (561 SE2d 139) (2002), based on a similar charging error should control here. But aside from the Court of Appeals's ruling in *Talton* not being binding on this Court, Ga. Const. of 1983, Art. VI, Sec. V, Par. III; *Rollf v. Carter*, 298 Ga. 557, 559 (784 SE2d 341) (2016), *Talton* is also distinguishable on its facts. There, the evidence at trial was that Talton threatened the victim with a gun, a friend tried to intervene, and the gun fired accidentally in the scuffle, hitting the victim in the toe. Talton was charged with aggravated assault "by shooting" the victim and not felony murder because the victim was not killed. But the trial court instructed the jury that it could find Talton guilty if he put the victim in immediate apprehension of receiving bodily injury. The *Talton* court reasoned that because the evidence presented in that case allowed the jury to find that Talton pointed the gun at the victim before the scuffle but never intentionally shot him, it was reasonably likely that the charging error affected the outcome of the trial. Here, by contrast, the jury

found Gude guilty of felony murder, which necessarily required a finding that Gude killed Hendley by shooting her, and there was virtually no chance that the jury based that finding on an intent to merely place her in fear of being shot, rather than an intent to shoot her, as we explained above. See *Patel*, 278 Ga. at 407 (5) (explaining that because Patel "was charged with felony murder predicated upon an aggravated assault[,] [i]t follows that, unlike *Talton*, the jury could not convict defendant by simply showing that he pointed a pistol at the victim; of necessity, it had to find that defendant shot the victim"). Gude therefore has not shown that the charging error likely affected the outcome of the proceedings. Accordingly, Gude has not shown plain error warranting reversal. This enumeration of error fails.

2. Gude also asserts that his trial counsel rendered ineffective assistance by failing to object to the erroneous aggravated assault instruction. This claim, too, fails.

To succeed on a claim of ineffective assistance of counsel, Gude must show both that his counsel's performance was deficient and

that such deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To establish prejudice, Gude "must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different." *Bates v. State*, 313 Ga. 57, 62 (2) (867 SE2d 140) (2022). And if Gude fails to make a sufficient showing on either the deficiency or the prejudice prong, we need not address the other prong. See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022).

Because Gude has not shown that the charging error likely affected the outcome of the proceedings under plain-error review, as explained in Division 1, he also cannot show a reasonable probability that but for his counsel's failure to object to that error, the result of his trial would have been different. See *Hampton v. State*, 302 Ga. 166, 168-69 (2) (805 SE2d 902) (2017) (observing that the harm element of plain error and the prejudice element of *Strickland* are equivalent). Gude's ineffective assistance claim fails.

*Judgment affirmed. All the Justices concur.*