NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 6, 2025

S25A0079. FOX v. THE STATE.

ELLINGTON, Justice.

Lucianna Nicole Fox appeals after a jury found her guilty of felony murder and other crimes in connection with the shooting death of Leroy Midyette.[1] On appeal, Fox asserts that the trial court erred in denying her motion for new trial because she received

---

[1] Midyette was shot and killed on November 5, 2016. On March 3, 2017, a Fulton County grand jury indicted Fox for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a firearm during the commission of a felony (Count 4). Fox was tried before a jury in Fulton County Superior Court in October 2019, and the jury found her not guilty of malice murder and guilty of all remaining counts. The trial court sentenced her to life with the possibility of parole for felony murder and five years consecutive confinement for possession of a firearm during the commission of a felony. The trial judge merged the guilty verdict for Count 3, aggravated assault, into Count 2, felony murder, for sentencing purposes. Trial counsel filed a timely motion for new trial on October 29, 2019, and new counsel filed an amended motion for new trial on December 8, 2022. The trial court held a hearing on the amended motion for new trial on July 12, 2023, and denied the motion on June 18, 2024. After Fox filed a timely notice of appeal, the case was docketed to this Court's term beginning in December 2024 and submitted for a decision on the briefs.

constitutionally ineffective assistance of trial counsel and the trial court committed plain error in charging the jury. She also asserts cumulative error based on these arguments. We affirm for the reasons stated below.

The evidence at trial showed the following. On the evening of November 5, 2016, Fox drove to the H. E. Holmes MARTA station (the "station") to meet her daughter. After turning into the station, Fox encountered Midyette, who was pulling a cart loaded with his belongings on a roadway that ran between a sidewalk and the station parking lot. Midyette was near the curb next to the sidewalk, and it appeared to one witness that he was trying to pull his cart onto the sidewalk. MARTA surveillance video shows that Fox stopped her vehicle a few feet away from Midyette. But when Midyette did not move, Fox began pulling her vehicle closer to Midyette's cart. Midyette came to the driver's door of Fox's vehicle, and one witness overheard Midyette tell Fox to go around him as he had a flat tire.

The surveillance video shows that while Midyette was at the

2

door, Fox pulled her vehicle forward toward Midyette's cart, hitting it. She then backed up and again drove forward, knocking the cart over as she proceeded up the roadway to a stop sign. Midyette followed Fox's vehicle, and when Fox stopped at the stop sign, he went behind her car and witnesses testified that he tapped or hit the back of the vehicle with his hands. In response, Fox exited her vehicle, and one witness testified that Fox and Midyette "had words." Two witnesses heard Fox telling Midyette, "I've got something for you." One witness testified that Fox said that Midyette had dented her vehicle, although he had not done anything to it. Another witness heard her cursing and telling Midyette, "You are going to get off back [sic] my vehicle." And a third witness heard Fox tell Midyette, "If you come any closer to me, I will shoot you." Fox then shot Midyette, killing him. After the shooting, Fox put her gun on the hood of her vehicle, and moved to the other side, away from the firearm. She told a nearby MARTA employee that Midyette needed help.

Fox was arrested by MARTA police, and after signing a

3

*Miranda*[2] waiver, she was interviewed early the next morning by a MARTA detective. In that interview, a video recording of which was played for the jury , Fox told the detective that she came upon Midyette standing in the street with his cart, so she stopped. She waved at Midyette to get out of the way, but Midyette did not move and kept telling Fox to go around. However, Fox told the detective that she would not drive on the wrong side of the road as Midyette suggested, nor did she have to drive on the wrong side just because Midyette wanted to walk in the street, as he "had no business in the street." Fox said that Midyette came to the driver's door of her vehicle and told her through the window he could not move his cart. He told her to go around and started reaching in a pouch at his side. Fox became scared because she "did not know what [Midyette] was digging for," so she moved her vehicle forward, accidentally hitting Midyette's cart. She then backed up and moved forward again, hitting the cart and pushing it out of the way so she could get away

---

[2] See *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

from Midyette.

Despite her fear, Fox said that she stopped at a nearby stop sign because "you got to abide by the law." Midyette followed and started hitting the back of her vehicle, with four to six "hard . . . bangs." Fox said she got out holding a gun[3] and walked to the back of the vehicle. Midyette was standing there with something in his hand, and Fox pointed her gun at him and told him "not to run up on [her] with that [thing] in his hand." She asked him why he had hit her truck and told him she was going to call the police. Midyette responded that Fox was "going to need the police." Fox said she felt threatened, so she went to the front passenger door of her vehicle to find her phone, with Midyette following. After Fox realized her phone was not working, she turned back toward the rear of her vehicle without ever entering it.

Fox told police that when she turned, Midyette was standing in front of her at the vehicle's back door with "that thing" in his hand

---

[3] Fox was armed that night with a shoulder holster containing a loaded gun, "law-enforcement-strength" pepper spray, and a knife.

that looked like a weapon to her. Fox said Midyette was approaching her and she felt threatened. Her gun was in her hand, and she shot Midyette, hitting him in the chest.

At trial, Fox's testimony about her initial encounter with Midyette was largely consistent with her prior statement to police, although she testified that Midyette had tried to open her door when he came to the driver's side window, which she did not tell the police. Fox also was consistent in testifying at trial that she shot Midyette because she was scared. However, her testimony regarding her encounter with Midyette at the stop sign differed in several respects from her statement to police. Fox testified that, after she heard the banging noises, she got out and approached the back of her vehicle, not to confront Midyette about damaging it, as she told the police, but because she was afraid that she had run him over and he was under her vehicle. She also said that she told Midyette, "Don't come up on me with that [thing] in your hand because I'm going to bust you." Fox further asserted that when she shot at Midyette, "[i]n [her] mind [she] thought the bullet was going to go into the woods

6

because . . . [she] didn't want to hit" anyone,[4] which she never mentioned in her police interview. She also gave a new description of holding the gun sideways down by her waist when she pulled the trigger, but she simply told the police that she shot Midyette in the chest.

Although Fox testified that Midyette had a weapon that night, the eyewitnesses who testified at trial said that Midyette did not threaten Fox, he had no weapon, and his hands were empty. No weapons, besides those belonging to Fox, were found at the crime scene, and there was no other evidence indicating that Midyette had a weapon. And although Fox testified that she shot the gun from waist-level, the medical examiner testified that the bullet entered Midyette's body above his right collar bone and traveled *downward*, from front to back and from right to left.

1. Fox contends on appeal that her trial attorney was ineffective for failing to request a jury charge on the defense of

---

[4] Fox explained that due to her lack of training with the weapon, her shot did not go into the woods but hit Midyette instead.

accident based on her testimony that she "didn't want to hit" anyone when she fired her gun. She contends that when a defendant testifies that she only meant to fire a warning shot, not to shoot the victim, she is asserting the defense of accident, not the defense of justification by way of self-defense.

To establish her claim of ineffective assistance of counsel, Fox must show that her trial counsel's performance was constitutionally deficient and that counsel's deficient performance prejudiced her defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "To show deficient performance, the defendant must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms." *Payne v. State*, 314 Ga. 322, 328-329 (3) (877 SE2d 202) (2022). This is "no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [Fox] bears the burden of overcoming this presumption." *Park v. State*, 314 Ga. 733, 740 (2) (879 SE2d 400) (2022) (citation omitted). "In particular, decisions

8

regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Id. at 741 (2) (citation omitted). To establish the prejudice prong, Fox "must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Payne*, 314 Ga. at 329 (3) (citation and punctuation omitted). "If [Fox] fails to establish one of these two prongs, we need not examine the other." Id. at 328 (3) (citation and punctuation omitted).

The issue of whether to charge the jury on the defense of accident first arose during the charge conference when the trial judge asked if such an instruction would be appropriate given Fox's testimony that she had intended to fire into the woods but missed and hit Midyette instead. After discussing the issue on the record with the judge and the prosecutor, Fox's trial counsel stated that he did not want a jury charge on accident. When later asked about that decision at the hearing on the motion for new trial, trial counsel

explained that he did not believe accident was a defense under the facts of the case, and, as a matter of legal strategy, he asked the trial court not to give a jury instruction on accident because he did not want to confuse the jury. Instead, he elected to rely solely on self-defense. The trial court denied Fox's motion for new trial on this ground, finding that she failed to show either deficient performance or prejudice to support her claim of ineffective assistance of counsel.

Here, the evidence supported trial counsel's choice to pursue a self-defense strategy. Fox was consistent in stating both to the police and at trial that she shot Midyette because he had a weapon and his behavior was threatening, which scared her. Fox also testified at trial that she told Midyette not to approach her with that "thing" in his hand because she was going to "bust" him. This testimony was supported by one of the eyewitnesses who heard Fox tell Midyette that if he came any closer to her, she would shoot him. Although Fox testified at trial that "in [her] mind" she thought the shot would go into the woods, the defense of accident was not an obviously stronger choice than focusing solely on self-defense. Fox never told police that

10

she did not intend to hit Midyette. Rather, she said only that she felt threatened so she shot him, which she reiterated at trial. Counsel's decision not to request an accident charge, which he believed would have undermined the all-or-nothing justification defense, was not patently unreasonable. See *Rosenbaum v. State*, 320 Ga. 5, 12 (907 SE2d 593) (2024) (holding that trial "counsel's choice to rely solely on the defense of accident, and not to request a jury charge on justification, was not so patently unreasonable that no competent attorney would have made that choice"); *Wilson v. State*, 313 Ga. 319, 324-325 (2) (b) (869 SE2d 384) (2022) ("Because some evidence supported the defense theory, and there was no other obviously stronger defense theory available, Appellant has not shown trial counsel's decision to be patently unreasonable.").

Thus, Fox failed to show that her trial counsel's chosen strategy to pursue only self-defense was objectively unreasonable, and the trial court properly denied Fox's claim of ineffective

assistance of counsel on this ground.[5]

2. Fox also asserts that the trial court committed three instances of plain error in charging the jury at her trial. To demonstrate plain error by the trial court, Fox must show

> (1) an error that was not affirmatively waived, (2) that the error was clear and obvious, and (3) that the error affected [her] substantial rights, which in the ordinary case means [s]he must demonstrate that it affected the outcome of the trial court proceedings. If [she makes] such a showing, we would have discretion to remedy the error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Davis v. State*, 305 Ga. 640, 643 (2) (827 SE2d 265) (2019) (citation

---

[5] Moreover, the principal case Fox cites to support her claim of ineffective assistance of counsel contradicts her argument. Fox relies on this Court's opinion in *Smith v. State*, 260 Ga. 274 (393 SE2d 229) (1990). The defendant in that case testified that after a dispute, his wife sped away in the family car with another person in the passenger seat. Smith said he felt his life was in jeopardy, and he wanted to fire a warning shot to scare his wife into stopping the vehicle before she hit him, but the shot hit the passenger. We determined in *Smith* that an instruction on self-defense was authorized in connection with the aggravated assault charge involving the defendant's wife. Although the defendant testified that he fired his gun only as a warning, we concluded that this evidence authorized a charge on self-defense as to the charge involving the wife. See *Smith*, 260 Ga. at 277 (6). Here, Fox testified that she fired her gun because she felt threatened by Midyette and wanted him to stop approaching her with a weapon in his hand. This evidence supported a charge on self-defense, not accident, despite her testimony that she did not intend to hurt anyone.

12

and punctuation omitted). "If one prong of the plain error test is not satisfied, we need not address the other prongs of the test." *Baker v. State*, 319 Ga. 456, 462 (2) (902 SE2d 645) (2024). "Satisfying this high standard is difficult, as it should be." Id. (citation and punctuation omitted).

(a) Fox asserts that the trial court committed plain error when it instructed the jury as follows:

> An affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Once an affirmative defense is raised, the burden is on the State to disprove it beyond a reasonable doubt.

This instruction was a pattern jury charge in effect at the time of trial.[6] However, Fox notes that this Court questioned this charge in *McClure v. State*, 306 Ga. 856, 865 (1) (834 SE2d 96) (2019), and later concluded that giving that charge constituted reversible error in *Reese v. State*, 314 Ga. 871, 881-882 (2) (880 SE2d 117) (2022).

---

[6] The pattern jury charge was later changed to read: "The defendant has raised a defense that even if he committed the act described in the indictment, there are circumstances that (justify) (excuse) (mitigate) it. Once this defense is raised, the state must disprove it beyond a reasonable doubt." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2024), § 3.00.00.

13

To establish the requisite error under the plain-error analysis, an appellant must demonstrate more than "actual legal error" by the trial court in charging the jury; rather, "the jury instruction in question must have an obvious defect rather than a merely arguable defect." *Smith v. State*, 301 Ga. 79, 81 (3) (799 SE2d 762) (2017) (citation and punctuation omitted). Therefore, "to show clear and obvious error, an appellant must cite to on-point controlling authority or to the unequivocally clear words of a statute or rule that plainly establish that the trial court erred." *Hill v. State*, __ Ga. __ (2) 2025 WL 676462, at *3 (Case No. S24A1234, decided Mar. 4, 2025) (citation and punctuation omitted). See also *Stewart v. State*, 311 Ga. 471, 476 (1) (b) (858 SE2d 456) (2021). Fox has failed to make this showing.

In *McClure*, we  acknowledged that the phrase "admits the doing of the act charged" in the former pattern charge could be misinterpreted.[7] 306 Ga. at 864 (1). We determined that

---

[7] This Court issued the opinion in *McClure* on October 7, 2019. The first day of testimony in Fox's trial was October 8, 2019, , and the trial court charged the jury a day later.

14

to raise an affirmative defense, a criminal defendant need not "admit" anything, in the sense of acknowledging that any facts alleged in the indictment or accusation are true. Rather, in asserting an affirmative defense, a defendant may accept certain facts as true for the sake of argument, and the defendant may do so for the limited purpose of raising the specific affirmative defense at issue.

Id. at 864 (1). Due to the potential for misinterpretation in the quoted phrase, we advised trial courts to consider using "wording more in line with [the Court's] analysis" in charging a jury regarding affirmative defenses. Id. at 865 (1). However, this Court did not reach the issue of whether giving the former pattern charge constituted reversible error. Id. at 366 (2).

In *Reese*, the defendant appealed the trial court's denial of his request to modify the former pattern charge to incorporate language from the *McClure* opinion.[8] 314 Ga. at 880 (2). In that case, the defendant denied pulling his gun or firing any shot, and this Court held that the trial court erred in giving the former pattern charge

___

[8] The defendant requested that the trial court charge the jury, "An affirmative defense is one in which the defendant argues that, even if the allegations of the indictment are true, there are circumstances that support a determination that he cannot or should not be held criminally liable." *Reese*, 314 Ga. at 880 (2).

15

because it was not properly adjusted to the evidence. Id. at 881-882 (2). We further determined that the trial court's instructional error was not harmless under the facts of that case and accordingly reversed on that ground. Id. at 882 (2).

Although the jury instruction in this case was the same as that discussed in *McClure* and *Reese*, Fox has failed to establish plain error. Pretermitting whether giving the former pattern charge was a clear and obvious error under the facts of this case,  any such error was unlikely to have "affected the outcome" of Fox's trial. Fox, unlike the defendant in *Reese*, admitted firing the shot that struck and killed Midyette, although she testified that she thought the shot would go into the woods instead of hitting him. Therefore, she admitted "the doing of the act charged," if not the intent to hurt Midyette through that action.[9] And Fox's sole affirmative defense was that her actions were justified because she acted in self-defense. Under these circumstances, Fox did not show that giving the former

---

[9] We note that the trial court fully charged the jury on intent and the State's burden to prove it beyond a reasonable doubt.

pattern charge was likely to have affected the outcome of her trial and thus she failed to establish plain error.

(b) Fox next contends that the trial court committed plain error when it failed to charge the jury on the manner of committing aggravated assault that was alleged in the indictment and instead charged the jury on a manner of committing aggravated assault that was not alleged.

As to the crime of aggravated assault, the trial court charged the jury that:

> A person commits the offense of aggravated assault when that person assaults another person with a deadly weapon. To constitute such an assault, actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury.

But Fox notes that she was not charged with committing aggravated assault by committing an act that placed Midyette in reasonable fear of immediately receiving a violent injury; rather the aggravated

17

assault charge was based on actually shooting Midyette.[10]

Even if we assume, without deciding, that the trial court committed clear and obvious error in charging the jury on a method of aggravated assault not charged in the indictment, Fox has not met her burden under the plain error standard of showing that the error likely affected the outcome of the proceedings. Although Fox claims that this charge allowed the jury to convict her of aggravated assault without proof of the requisite intent, this Court has repeatedly made clear that

> charging the jury on a method of committing a crime not charged in the indictment does not likely affect the outcome of the proceedings when the jury is also instructed – as it was here– that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt  and [it] is provided with a copy of the indictment during deliberations.

*Jiles v. State*, 320 Ga. 605, 614 (2) (d) (910 SE2d 159) (2024) (quoting

*Gude v. State*, 320 Ga. 308, 311 (1) (908 SE2d 620) (2024) (citation

---

[10] Count 3 of the indictment charged Fox with the offense of aggravated assault in that she "did unlawfully commit an aggravated assault upon the person of Leroy Midyette by shooting him with a handgun, the same being a deadly weapon.

18

and punctuation omitted)).[11] The jury was also charged that the State bears the burden of proving intent beyond a reasonable doubt, the methods that may be used to show intent, and that a defendant may not be presumed to have acted with the requisite intent.

Moreover, the jury found Fox guilty of felony murder predicated on aggravated assault, which necessarily required a finding that Fox killed Midyette by shooting him, and "there was virtually no chance that the jury based that finding on an intent to merely place him in fear of being shot, rather than an intent to shoot him," *Jiles*, 320 Ga. at 615 (2) (d) (citation and punctuation omitted), especially where the jury also was charged on Fox's claim of self-defense. See *Gude*, 320 Ga. at 311 (1) (rejecting a claim of plain error for alleged instructional error like that raised here on the ground that it was "highly unlikely that the jury convicted [the defendant]

_____

[11] Although *Jiles* addressed a claim of prejudice based on ineffective assistance of counsel, not plain error, we have determined that "the test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review." *Knighton v. State*, 310 Ga. 586, 597 (853 SE2d 89) (2020). Therefore, the reasoning of that case applies equally under a plain error analysis.

of felony murder predicated on aggravated assault without a finding that [he] intended to shoot [the victim] because it is undisputed not only that [the defendant] actually shot and killed her, but also that [his] defense at trial was that he shot the victim in self-defense, on which the jury was charged"). See also *Cato v. State*, 304 Ga. 496, 498-499 (2) (820 SE2d 41) (2018) ("[T]he context of the instructions made the juror confusion suggested by [the defendant] even more unlikely. [The defendant was] charged with felony murder, the jury was properly instructed on felony murder, and there was no dispute that [the victim] died as a result of being shot (not as a result of being placed in fear.").

Accordingly, Fox failed to show that this aggravated assault charge likely affected the outcome of the proceedings and thus failed to show plain error warranting reversal on this ground.

(c) Fox further argues that the trial court committed plain error when it failed to sua sponte charge the jury on the defense of habitation under OCGA § 16-3-23, even though it was not Fox's sole defense. However, "[c]ritical to the application of the defense of

20

habitation is the moment in time at which the defendant resorts to deadly force and the act being performed by the victim at that moment." *Coleman v. State*, 286 Ga. 291, 298 (6) (687 SE2d 427) (2009). We have held that "[w]here there is no evidence that the victim was attempting to enter or attack the habitation at the time he was injured by the defendant, the defense of habitation is not available," id., and when the "habitation" is a motor vehicle, "there would need to be evidence that [the victim] was entering or attempting to enter [the defendant's vehicle] *at the time*" that the defendant shot him in order for the defense of habitation to apply. *Walker v. State*, 301 Ga. 482, 486 (2) (b) (801 SE2d 804) (2017) (emphasis added). Moreover, this Court has held that

> deadly force may be used in the defense of habitation context *only when* an entry is made or attempted in a violent or tumultuous manner or for the purpose of committing a felony, but the use of deadly force may *not* be used when no entry is made or attempted.

*Nesbit v. State*, __ Ga. __, __ (1) (a), 2025 WL 676639, at *6 (Case No. S25A0190, decided Mar. 4, 2025) (citation and punctuation omitted). Here, there is no evidence that Fox shot Midyette when he was

entering or attempting to enter her vehicle. Although Fox testified that Midyette had earlier approached her driver side window and tried to open her car door, there is no evidence that he made any attempt to enter Fox's vehicle after she pulled it to the stop sign or that he was making any such attempt at the time of the shooting. Instead, the evidence shows that Fox shot Midyette while they both stood outside the vehicle. Accordingly, the trial court did not err in failing to charge on defense of habitation and therefore Fox has failed to show plain error on this ground. See *Walker*, 301 Ga. at 486 (2) (b) (defense of habitation did not apply where, although appellant opened his vehicle door and retrieved his gun, he and the victim remained outside the vehicle during their confrontation).

3. Fox asserts that the cumulative impact of her asserted errors likely affected the outcome of the trial. Fox specifically contends that the cumulative impact of her trial counsel's ineffective assistance in failing to assert an accident defense and the trial court's erroneous instruction on aggravated assault combined to affect her trial's outcome.

However, we determined that Fox failed to show that her trial counsel's performance was constitutionally deficient in choosing to pursue only self-defense, and not the defense of accident, at her trial. And although we pretermitted error with regard the former pattern charge and assumed, for purposes of considering Fox's appellate argument, that the trial court's instruction on aggravated assault was clear and obvious error, we concluded that Fox failed to show any prejudice resulting from those charges that likely affected the outcome of her trial. Moreover, we determined that the trial court committed no error with regard to the other jury instruction Fox contests on appeal.

It is well settled that to establish reversible cumulative error, an appellant must show that "(1) at least two evidentiary errors, or one error and one deficient performance of counsel, were committed at trial, and that (2) those errors, considered along with the entire record, 'so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial.'" *Smith v. State*, 320 Ga. 825, 839 (912 SE2d 563) (2025) (quoting *State v. Lane*, 308 Ga. 10, 21 (4)

(838 SE2d 808) (2020)). We conclude that in light of the evidence at trial, including Fox's admission that she fired the shot that killed Midyette, she failed to show that she was deprived of a fair trial, based on any combined prejudicial effect from any error in giving the former pattern charge and the assumed error in the aggravated assault charge. Although the former pattern charge incorrectly stated that a defendant was required to admit the doing of the act charged to assert an affirmative defense, Fox admitted doing the act charged, shooting Midyette, and even assuming that the trial court incorrectly charged the jury on aggravated assault, that admission also made it highly unlikely that the jury found Fox guilty of felony murder without finding that she shot Midyette as alleged in the indictment. Accordingly, Fox's claim of cumulative error fails.

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Bethel, McMillian, LaGrua, Colvin, and Pinson, JJ., concur.*