**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**December 15, 2025**

# In the Court of Appeals of Georgia

A25A1941. COLVIN v. THE STATE.

BROWN, Chief Judge.

Following a jury trial, LaCandrice Monique Colvin was convicted of aggravated assault, possession of a firearm during commission of a felony, and reckless conduct. Colvin filed a motion for new trial, which the trial court denied. She appeals from the trial court's order, asserting insufficiency of the evidence and challenging an evidentiary ruling and jury instruction. We find no error and affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation and punctuation omitted.) *Anderson v. State*, 348 Ga. App. 322 (822 SE2d 684) (2018). So viewed, on May 21, 2023, several female patrons

were involved in an altercation on the dance floor of the Oyster Bar and Grill (the "Bar"), and Jerome Simington, who worked security, responded to the altercation. Simington described one of the women who was fighting, later identified as Colvin, as bigger than the others, and he testified that when he told her he was with security, she did not listen and began pushing him. When she would not leave willingly, two other security team members came to the floor and they all forcibly escorted Colvin out.

Marvin Thompson, who also worked security and collected money and checked IDs at the door, testified that he heard glass break, looked at the dance floor, and saw security struggling with Colvin. As security escorted Colvin out, two of her friends tried to pull them away from Colvin, and one of Colvin's friends grabbed Thompson's flashlight and started hitting the security team members on their backs. Thompson "rushed" the woman wielding the flashlight, pushed her out of the door, and retrieved his flashlight. Simultaneously, Colvin and those escorting her fell out of the front door. The security team returned to the inside of the Bar, and Colvin and her friend walked toward a car in the parking lot. After watching Colvin and the other woman walk towards their car in the parking lot for about five seconds, the security

team went back into the car. Thompson then returned to his seat near the door, accompanied by Nassib Mughrabi, another security team member, who had helped escort Colvin out. Mughrabi saw Colvin coming up the walkway. He walked outside with mace in his hand, which they had used when escorting Colvin and her friends out, and he immediately saw Colvin walking back towards the bar with a gun in her hand. Mughrabi then ran back inside to tell Thompson, who was the only security member allowed to have a gun at work. Mughrabi testified that he was concerned for his own well-being as well as the safety of the people in the Bar. Mughrabi described Colvin as a tall, muscular woman with dyed dreads that were darker at the roots and identified Colvin at trial as the woman he interacted with that night.

Once alerted by Mughrabi, Thompson saw Colvin through the glass door, standing about six feet away holding a gun and heard her cursing at and threatening them. Thompson pulled out his gun and covered himself against a wall, pointed his gun at Colvin, and told her to put the gun down. Thompson repeated his command several times to no avail. He testified that he was afraid that Colvin was going to shoot him or somebody on the dance floor because she was standing in the door and would have hit someone had she fired her gun. Colvin walked to the edge of the parking lot

near the walkway to the Bar, and Thompson exited the building and positioned himself behind a brick column, continuously telling Colvin to put down her weapon. Colvin continued to curse at and threaten Thompson, and he told her he would shoot her if she pointed the gun at him or the entry door. Colvin cursed at him again, took a step back, and shot the gun into the air. She then opened the passenger door of a "silver-looking SUV," cursed more, then shot the gun again before getting in the car and quickly leaving the parking lot. Thompson recalled that the gun looked black.

Officer Christopher Wingate testified that he was dispatched to the Bar after learning that there was a disturbance in the parking lot and that shots had been fired. He was the first officer to arrive and was directed by a group of people to an unspent .9 millimeter round that was on the ground. Other officers arrived and during their search, they found one shell casing near the unfired round. Officer Wingate identified pictures of the scene, the unspent .9 millimeter round, and the shell casing that were entered as exhibits at trial.

Officer Matthew Dykes testified that while en route to the scene, dispatch advised that there were up to four females in a gray SUV that left the parking lot of the Bar, that the person who was the shooter had blonde hair, and that the women may

have been headed to Chattanooga, Tennessee. Officer Dykes visited the scene and after completing the investigation and receiving evidence from Officer Wingate, he stopped at a MAPCO gas station where he observed five females standing against the building and a gray SUV parked in the parking lot. He observed that one of the women, Colvin, was taller than the others and had blond dreads with black roots. Photographs of the women were introduced into evidence.

Detective Scott Murray was called to interview the women at the MAPCO about the shooting at the Bar. Detective Murray read each woman their Miranda rights and spoke with all five of them, and Colvin disclosed that she had been at the Bar. The owner of the SUV gave Detective Murray consent to search the vehicle, and he located a small black handgun in the center console. Detective Murray informed Officer Joshua Bethune, who had also visited the scene, that the gun was in the console, and Bethune retrieved the handgun after Murray took some pictures. Officer Bethune found one unspent round that was jammed in the gun's chamber and another in the magazine inserted into the bottom of the gun. He explained that for the firearm to be jammed, it had to have been either shot or racked. The pictures of the handgun

5

and SUV were introduced into evidence. Detective Murray identified the brand of the gun and testified that it took .9 millimeter bullets.

Officer Dykes testified that he and officer Bethune processed the evidence and explained how the evidence is stored and checked out for trial. He then went on to identify the rounds found at the Bar, as well as in the SUV, as .9 millimeter bullets. Officer Dykes also identified Colvin as the same individual he saw at the gas station.

Colvin was indicted on charges of aggravated assault, reckless conduct, and possession of a firearm during the commission of a felony. The jury convicted Colvin of all three charges, and she filed a motion for new trial, challenging the sufficiency of the evidence and the introduction of evidence of what occurred inside the Bar. The trial court summarily denied her motion, and this appeal ensued.

1. In her first enumeration of error, Colvin challenges the sufficiency of the evidence of aggravated assault. We, however, find that the evidence was sufficient.

> [A]ggravated assault with a deadly weapon . . . occurs when someone attempts to commit a violent injury to another or commits an act which places another in reasonable apprehension of immediately receiving a

violent injury by use of a deadly weapon. OCGA §§ 16-5-20 (a)[1]; 16-5-21 (a) (2).[2]

(Punctuation omitted.) *Hooks v. State*, 318 Ga. 850, 852 (2) (a) (901 SE2d 166) (2024). "Whether a victim has been placed in reasonable apprehension of injury is a question of fact, which may be established by indirect or circumstantial evidence. The presence of a deadly weapon would normally place a victim in reasonable apprehension of being injured violently." (Citation and punctuation omitted.) *Jackson v. State*, 315 Ga. 543, 549 (1) (a) (883 SE2d 815) (2023).

Here, the indictment charged that Colvin "did make an assault upon the person of Marvin Thompson with a deadly weapon, to wit: a handgun, by holding said weapon near him and making verbal threats to harm him . . . ." Colvin maintains that there was no evidence that Thompson had a reasonable apprehension of injury,

---

[1] OCGA § 16-5-20 (a) provides: "A person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury."

[2] OCGA § 16-5-21 (a) (2) provides that "[a] person commits the offense of aggravated assault when he or she assaults: . . .[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

focusing on Thompson's testimony that she did not point her gun at him but held the gun near her face with the barrel pointed toward the sky. However, there was direct testimony from Thompson that he repeatedly asked Colvin to put the gun down, that Colvin was threatening him and cursing at him, and that he was afraid that she would shoot him or someone else in the Bar. Thompson also testified that he positioned himself defensively when directing Colvin to put down her weapon. Thus, the fact that Colvin did not point the gun directly at Thompson is inapposite.

We have found that evidence that a defendant fired warning shots into the air constituted aggravated assault with a deadly weapon. See *State v. Small*, 369 Ga. App. 824, 826 (892 SE2d 193) (2023). Similarly, in *Huguley v. State*, 242 Ga. App. 645 (529 SE2d 915) (2000), evidence that the defendant admitted that he repeatedly fired his weapon as warning shots into the air with no intent to hit the victims was sufficient to convict him of aggravated assault. See id. at 649 (1) (b). Accordingly, Thompson's testimony that he was afraid that Colvin would shoot him and that he positioned himself defensively while trying to convince her to put her weapon down was sufficient to establish that he had a reasonable apprehension of being injured and therefore supported Colvin's aggravated assault conviction.

8

2. Next, Colvin argues that the trial court erred when it permitted the State to present evidence of her conduct inside the Bar for which she was not charged. Specifically, she maintains the evidence should have been excluded under OCGA § 24-4-403 ("Rule 403") because it was not relevant to the crimes charged that occurred outside the Bar, was not necessary to prove said crimes, and was not inextricably intertwined with the charged crime. The trial court concluded that the evidence was relevant, intertwined with the charges as it was a continuous interaction, and that its probative value outweighed any danger of unfair prejudice.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. Relevant evidence is generally admissible, see OCGA § 24-4-402, but it may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

> Rule 404 (b) generally prohibits the admission of evidence of the
> defendant's "other crimes, wrongs, or acts" to prove the defendant's
> character, but it allows such "other acts" evidence for certain limited

9

purposes. See OCGA § 24-4-404 (b). . . . [H]owever, . . . Rule 404 (b) applies only to other acts that are extrinsic to the charged crime, and that other acts that are intrinsic to the charged crime may be admissible without respect to Rule 404 (b).

*Holloway v. State*, 320 Ga. 653, 666 (6) (911 SE2d 543) (2025). Evidence is considered intrinsic to the charged offense when it is "(1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." (Citation and punctuation omitted.) *Johnson v. State*, 312 Ga. 481, 491 (4) (863 SE2d 137) (2021). Thus, "evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime[.]" (Citation and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). "[T]his sort of intrinsic evidence remains admissible even if it incidentally places the defendant's character at issue." (Citation and punctuation omitted.) Id. at 486 (IV) (d).

"In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue

prejudicial impact." (Citation and punctuation omitted.) *Heade v. State*, 312 Ga. 19, 27 (3) (860 SE2d 509) (2021). We review the trial court's evidentiary rulings for abuse of discretion, and "[e]rror shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." (Citation and punctuation omitted.) *Dupree v. State*, 374 Ga. App. 421, 429 (6) (913 SE2d 41) (2025). Colvin has not established that the trial court abused its discretion.

The evidence established that the fight inside the Bar arose from the same transaction as the aggravated assault that occurred outside the Bar. It was because of what occurred inside that the security guards forcibly removed Colvin from the Bar and were apprehensive when they saw her returning to the door of the establishment. A jury could infer from the evidence that Colvin was angry and went to her car to get the gun solely because she was forced to leave the Bar by the security guards due to the altercation she was involved in while inside the Bar. Accordingly, we cannot conclude that the trial court abused its discretion when admitting the evidence of what happened inside the Bar because it was relevant and inextricably intertwined with the aggravated assault. See *Hughes v. State*, 312 Ga. 149, 152-153 (1) (861 SE2d 94) (2021) (evidence that the defendant vandalized a family member's car before he shot a

different family member was a part of the chain of events leading to the charged crimes and was reasonably necessary to complete the story for the jury); *Wimberly v. State*, 302 Ga. 321, 326 (2) (b) (806 SE2d 599) (2017) (because evidence of prior difficulties between the victim and the defendant was integral to the narrative surrounding the crimes, its probative value outweighed risk of undue prejudice). Accordingly, this enumerated error also fails.

3. In her final enumeration of error, Colvin argues that the trial court committed plain error when it failed to charge the jury on the manner of committing aggravated assault that was alleged in the indictment, i.e., making threats while holding the weapon, to which trial counsel failed to object. We find no error.

> To establish plain error, [Colvin] must meet each of the following requirements: First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by [Colvin]. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected [Colvin]'s substantial rights, which in the ordinary case means [she] must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of

judicial proceedings. This Court does not have to analyze all elements of the plain-error test where an appellant fails to establish one of them.

(Citations, punctuation, and emphasis omitted.) *Floyd v. State*, 321 Ga. 717, 722 (2) (917 SE2d 93) (2025). Moreover, Colvin must demonstrate that "the jury instruction in question must have an obvious defect rather than a merely arguable defect." *Fox v. State*, 321 Ga. 411, 417 (2) (915 SE2d 592) (2025). To show such a clear and obvious error, Colvin must "cite to on-point controlling authority or to the unequivocally clear words of a statute or rule that plainly establish that the trial court erred." (Citations and punctuation omitted.) Id. Colvin has not met this burden.

As referenced earlier, the indictment charged, in pertinent part, that Colvin "did make an assault upon the person of Marvin Thompson with a deadly weapon, to wit: a handgun, by holding said weapon near him and making verbal threats to harm him[.]" The trial court charged the jury:

> The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt. There is no burden of proof upon the Defendant whatsoever, and the burden never shifts to the Defendant to introduce evidence or to prove innocence.

13

It also charged as follows:

> For aggravated assault, the State must prove that the Defendant, one, assault [sic] another person; two, with a deadly weapon. To prove assault, the State does not have to prove that the other person was actually injured. However, the State must prove that the Defendant committed an act that placed the person in reasonable apprehension of immediately receiv[ing] a violent injury. A firearm, when used in the way a firearm is ordinarily used, is a deadly weapon.

The jury had the indictment in the jury room when they deliberated.

> Our Supreme Court has made clear that

> charging the jury on a method of committing a crime not charged in the indictment does not likely affect the outcome of the proceedings when the jury is also instructed — as it was here — that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt and it is provided with a copy of the indictment during deliberations.

(Citation and punctuation omitted.) *Fox*, 321 Ga. at 419 (2) (b). Accordingly, Colvin has failed to establish plain error warranting reversal on this ground.

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*

14